# COSTLEY *v.* NEVADA INDUSTRIAL INSURANCE COMMISSION

No. 2911

March 23, 1931.                                          296 P. 1011.

*M. A. Diskin,* for Appellant:

*J. W. Dignan,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

This action was brought by W. E. Costley against the Nevada Industrial Insurance Commission to recover compensation in the sum of $792 for an injury by accident alleged to have arisen out of and in the course of his employment as a miner by the C. G. Dennis Leasing Company, a company subject to the provisions of an act known as the "Nevada Industrial Insurance Act." 3 Rev. Laws of Nevada, p. 3123. The case was tried to the court without a jury. Judgment went for Costley for the full sum of $792. The commission appealed.

There is no dispute as to the facts, and there is no controversy as to the procedure. The facts, omitting details, are substantially as follows:

Prior to November 2, 1928, the C. G. Dennis Leasing Company was engaged in developing and operating a mine prospect located on Canyon creek in Humboldt County, Nevada. Prior to said date W. E. Costley had been engaged in prospecting a mining claim of his own located on said creek some distance below the property of the C. G. Dennis Leasing Company. Oscar L. Cash was superintendent of the company and H. J. Coss was foreman of its operations, with authority to hire and discharge men. On and prior to said date the company furnished sleeping quarters to its employees. On said date Costley applied to Coss for a job, representing that Mr. Cash had told him that he thought that Coss could furnish him with work for a few days. Coss said to Costley that "he had a little work, but that he had no sleeping quarters for him." Costley said: "I will furnish my own tent." Coss said: "That is all right, if you want to bring your own tent up here and set it up, you can go to work tomorrow morning." Costley said: "Alright, I will do it."

Thereupon, Costley left the premises and within a short time returned with his tent and outfit on his automobile. He asked Coss where he should set up the tent. Coss pointed out the place, and Costley went about the

work of setting up his tent, preparatory to going to work the next morning pursuant to his employment. While Costley was cutting lumber to fasten the tent down, he accidently cut his foot, which resulted in the loss of a greater part of the second toe, and the greater toe was left stiff, which, according to the testimony of Dr. Hough, his attending physician, permanently disabled him from engaging in his occupation as a miner or any employment that required him to be on his feet much and to that extent his injury, in the opinion of Dr. Hough, was permanent.

The superintendent testified that Costley's name did not appear on the payroll of the company for the reason that "he was hired to go to work the next day and that, at the time of the accident, he felt that Costley hadn't commenced any employment for the company at that time." The superintendent, however, reported the accident to the Nevada industrial insurance commission. It appears that Dr. Hough made reports to the commission of his treatment of Costley from time to time from November 2, 1928, up to the forepart of June, 1929. Costley made application to the Nevada industrial insurance commission for compensation for his injury, which was refused. Thereupon, he commenced this action in the court below against the commission to recover the sum of $792 as compensation for his injury.

Upon the trial Costley did not take the stand as a witness, but made and rested his case upon the testimony of his witness Coss and that of his physician, Dr. Hough. The commission made and rested its case upon the testimony of said witnesses and that of its witness, Mr. Cash, the superintendent of the leasing company.

The record discloses that upon the conclusion of the testimony, it was stipulated in open court that, if the court should find and hold that Costley was accidently injured while in the employ of the leasing company, and that the injury arose out of and in the course of his employment, then and in that event Costley should have judgment against the commission for the sum of

$792 together with costs. Judgment followed in favor of Costley.

By appropriate assignments of error the attorney-general, who ex officio is attorney for the commission, presents the following propositions: (1) That Costley was not an employee of the leasing company as the term "employee" is defined by the Nevada industrial insurance act; (2) that the accident in question did not arise out of and in the course of the employment as provided in the act.

Upon consideration of the argument advanced in support of these propositions, we think they are resolvable into the single question: "Had the relation of employer and employee begun before the occurrence of the accident?" In other words, "Did the accident arise out of and in the course of the employment?" The learned attorney-general says that it did not. In support of his conclusion he cites a ruling of the Ohio industrial insurance commission (1914) entitled In Re Claim of Tucker. In that case it appeared that Tucker was employed by the Giraud Iron Company on Saturday, February 2, 1914, and under his contract he was to begin work on the following Monday morning. Tucker was without funds and was sent by his employer to a boarding house under its management and control and while there, at about 6 o'clock on Saturday evening, he fell downstairs and sustained an injury. The commission held that an employee injured between the time he was employed and actually entering upon the executon of the work for which he was employed, the injury being in nowise occasioned by the work to be performed, was not an injury arising out of and in the course of the employment.

■ In line with In Re Tucker ruling, one member of the court has brought to the attention of the writer the English case of Whitbread v. Arnold, 99 L. T. R. 103. The English case is cited because the language of our statute with reference to the recovery of compensation where an employee is injured by accident arising out of and in the course of the employment is identical with

the language of the British workmen's compensation act of 1906, and therefore cases in that jurisdiction are useful in construing the same language in our act. Whitbread v. Arnold was a case where the deceased, a shepherd, had been newly engaged by a farmer. The latter sent a wagon and horses to convey the shepherd with his family and furniture to the farm. When some 40 yards from the cottage which he was to occupy the shepherd was thrown under the wheels of the wagon and killed. It was held that, although there was a contract of service between the farmer and the shepherd, the latter had not yet entered upon the employment. Consequently, the accident did not arise "out of and in the course of the employment" of the deceased. The authority of the Ohio and the English cases is clearly distinguishable from Costley's case inasmuch as their determining features are not the same. It is true that Costley had not commenced the work he was employed to perform when he was injured, but the beginning of a man's work is not necessarily the beginning of his employment. The moment of beginning the actual work is not the true test of the time when the employment begins. Knowle's Workman's Compensation (Eng.) 1906, p. 28. It is not necessary that the hour of work shall have arrived and that the work shall have been actually begun in order to bring an accident within the scope of the employment. Annotation-Workmen's Compensation, L. R. A. 1916A, page 235, citing in support Hills v. Blair, 182 Mich. 20, 148 N. W. 243; Milwaukee v. Althoff, 156 Wis. 68, 145, N. W. 238, L. R. A. 1916A, 327.

■■ The attorney-general argues that to constitute an employee as defined by the statute, section 7½ (a), the person employed must be in the service of an employer under a contract of hire, and that Costley at the time of the accident being engaged in the performance of an act independent of the relation of master and servant or employer and employee, his injury, as a matter of law is not compensable. The argument is not persuasive. The provision of the statute which

defines employer and employee must be construed as liberally to effectuate the purpose of the legislation as any other exception found in the act. Honnold, Workmen's Compensation, sec. 58, p. 191. Upon consideration of all the circumstances and the conditions of Costley's contract of employment, it is apparent that the relation of employer and employee had not only begun before the occurrence of the accident, but that at the time thereof Costley was engaged in the performance of a service incidental to and connected with his employment. Costley's motive for offering to furnish and erect his own tent on the premises of his employer is immaterial, if the furnishing and the erection of the tent was connected with the employment. It is neither fair nor just to assume that Costley was employed out of favor to him or that the furnishing and erection of the tent was for his own accommodation or personal convenience. The element of personal convenience or friendly accommodation was not present in this case, as it was in the Ohio and the English rulings. At the time of the accident Costley was not engaged in voluntarily doing something entirely outside of his employment. Neither can it be said that his injury was caused by a fortuitous circumstance unconnected with the employment. Under all these circumstances we can see no ground upon which to hold that the accident in question did not arise out of and in the course of the employment. Consequently, the case is one clearly within the terms of the statute, which, it is conceded, must be liberally construed to effectuate the purposes of the legislation. Virden v. Smith, 46 Nev. 208, 210 P. 129; Rep. Nev. I. I. Comm. 1913–1914, p. 19.

The judgment is affirmed.

DUCKER, J.: I concur.

COLEMAN, C. J., concurring:

While I feel that the better reasoning and the weight of authorities lead to a contrary conclusion to that reached in the foregoing opinion, it must be

conceded that the line of demarcation between the two lines of authorities is very fine; hence I yield my judgment to that of my associates, and concur in the order of affirmance.