Suzanne **BORREGO**, as Administratrix of the Estate of Pedro Borrego, Deceased, Plaintiff,

v.

**STAUFFER CHEMICAL COMPANY**, a corporation, Defendant.

Civ. No. LV–1298.

United States District Court, D. Nevada.

Aug. 5, 1970.

Morton Galane, Las Vegas, Nev., for plaintiff.

Cromer & Barker, Las Vagas, Nev., for defendant.

## DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS

ROGER D. FOLEY, Chief Judge.

This is an action for wrongful death commenced by the widow of the decedent as administratrix of his estate. Plaintiff's intestate was allegedly injured by the defendant on April 11, 1968, which injury resulted in his death on April 25, 1968. In paragraph 11 of her complaint, plaintiff alleges:

"The injury suffered by BORREGO on or about April 11, 1968, resulted in his conscious pain and suffering \* \* \*. By reason of the survival of the aforesaid injury claim, the estate of PEDRO BORREGO, deceased, has been damaged in the sum of One Hundred Twelve Thousand Five Hundred ($112,500) Dollars for conscious pain and suffering \* \* \*."

Defendant has moved for judgment on the pleadings, contending that under the Nevada wrongful death act the defendant cannot be held liable for the pain and suffering allegedly sustained by the plaintiff's intestate.

While I find that the Nevada Supreme Court has not directly ruled on this question, there is Nevada case law which supports defendant's motion. The Nevada Supreme Court has in two cases held that in a wrongful death action, the measure of damages is based upon and limited to the pecuniary loss sustained by the heirs of the person killed.

There are three reported decisions of this court that are in point. The first case, decided in 1881, is authority for the position plaintiff takes in opposition to this motion. The second case, decided in 1902, and the third case, in 1915, support defendant's contention that damages for the pain and suffering of the deceased are not recoverable in an action under the Nevada wrongful death act.

I believe the defendant's motion for a judgment on the pleadings is good and the same is granted.

Before discussing the case law, a review of the pertinent legislative history of the Nevada wrongful death act and the act providing for the survival of causes of action for personal injuries is in order.

The pertinent provisions of the Nevada wrongful death act are found in Nevada Revised Statutes 41.080 and 41.-090(2), and the survival act is found in

Nevada Revised Statutes 41.10u. These sections are set out in full below.[1]

## LEGISLATIVE HISTORY

### The Wrongful Death Act

Nevada Revised Statutes 41.080 was originally enacted in 1871 and remains unchanged. (§ 3983 Cutting's Compiled Laws of 1900; § 705 Civil Practice Act of 1911; § 5647 Revised Laws of 1912; § 9194 Nevada Compiled Laws of 1929.)

The history of the language now found in NRS 41.090(2) is as follows:

As a part of Section 2 of the wrongful death act of 1871, the pertinent language read:

" * * * and provided further, the jury, in every such action, may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

(§ 3984 Cutting's Comp.Laws 1900; § 706 CPA 1911; § 5648 Rev.Laws 1912; § 9195 NCL 1929.)

In 1939 minor changes were made (1939 Stats. of Nevada, p. 17; § 9195 NCL 1929, 1931–41 Supp.); the provision was then amended to read as follows:

"and provided further, the court or jury, as the case may be, in every such action may give such damages,

1. NEVADA REVISED STATUTES:

"Actions For Death by Wrongful Act, Neglect or Default

"41.080 Liability for death by wrongful act.

Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

"41.090 Proceeds of judgment not liable for debt of deceased; damages.

" * * * *

"2. The court or jury, as the case may be, in every such action may give such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person entitled to maintain such action, and every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort."

"Survival of Causes of Action For Personal Injuries

"41.100 Cause of action for injuries not to abate by reason of death; damages; assignability; trust, loan receipts from insured; subrogation suits.

"1. Causes of action, whether suit has been brought upon the same or not, in favor of the injured party for personal injuries other than those resulting in death, whether such injuries be to the health or to the reputation or to the person of the injured party, shall not abate by reason of his death nor by reason of the death of the person against whom such cause of action shall have accrued; but in the case of the death of either or both, such cause of action shall survive to and in favor of the heirs and legal representatives of such injured party and against the person, receiver or corporation liable for such injuries, and his or its legal representatives; and so surviving such cause of action may be hereafter prosecuted in like manner and with like legal effect as would a cause of action for injuries to or destruction of personal property.

"2. The court or jury in every such action may give such damages, pecuniary and exemplary, as it shall deem fair and just. Every person entitled to maintain such action, and every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

"3. Nothing in this section shall be construed to make such causes of action assignable, nor may an insurer obtain a trust or loan receipt from an insured prior to making medical payments to the insured under an insurance policy.

"4. The provisions of this section shall not prevent subrogation suits under the terms and conditions of an uninsured motorists' provision of an insurance policy."

pecuniary and exemplary, as shall be deemed fair and just, and in so doing may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

In 1957 the pertinent language as amended in 1939 became 41.090(2) and was further amended in 1960 to read as it now does. (1960 Stats. of Nevada, p. 321, 322.) It should be noted that the language, "The court or jury, as the case may be, in every such action may give such damages, pecuniary and exemplary, as shall be deemed fair and just", was not changed by the 1960 amendment. However, in 1960 the phrase, "and in so doing may take into consideration the pecuniary injury resulting from such death to the kindred herein named", was deleted and a new sentence was added:

"Every person entitled to maintain such action, and every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort."

### The Survival Act

The language presently found in NRS 41.100 was originally enacted in 1937 (Stats. of Nevada 1937, p. 33; § 240.01 NCL 1929, 1931–41 Supp.). NRS 41.-100(1) is unchanged from the 1937 act. The first sentence of NRS 41.100(2) is unchanged from the 1937 act. The second sentence of NRS 41.100(2) was added in 1960 (Stats. of Nevada 1960, p. 321, 322). There were further amendments in 1967 and 1969 that are not material here, adding the language now found in NRS 41.100(3) and 41.100(4).

### WRONGFUL DEATH ACTS

At common law no cause of action could be found upon the death of an injured person. This rule has been changed by statutes in England and in the United States. The first statute was enacted in England in 1846 and known as Lord Campbell's Act. As

Prosser points out (Prosser on Torts, Second Edition, § 105), pages 705 and 706:

"Statutes dealing with death as the result of tortious conduct are of three general types:

a. Those which merely authorize the survival of the action which the decedent himself might have maintained, and enlarge it to include the damages sustained by his estate through his death.

b. Those which create a new cause of action for the benefit of the decedent's estate, originating upon his death, and permit recovery of the damages suffered by the estate.

c. Those which create a new cause of action for the benefit of particular surviving relatives, and permit recovery of the damages sustained by such individuals."

For the plaintiff to be entitled to recover in this action for the pain and suffering endured by the decedent, the Nevada wrongful death act, as contained in NRS 41.080 and NRS 41.090(2), must properly fall within group (a) or (b) above. However, for the reasons given infra, I believe the Nevada act falls within group (c).

### ACTS PROVIDING FOR SURVIVAL OF CAUSES OF ACTION FOR PERSONAL INJURIES

At common law a cause of action in tort for personal injury not resulting in death abated upon the death of either the tort-feasor or the injured party. In England and in all of the states, this rule has been changed by statute. The survival statutes of each jurisdiction must be consulted. (See Prosser, § 105, p. 705, supra.)

NRS 41.100 provides that the causes of action in favor of an injured party for personal injuries shall not abate except when such personal injuries result in death. In the instant case, it is alleged that the injury sustained by the plaintiff's intestate on April 11, 1968,

resulted in his death on April 25, 1968. Obviously, NRS 41.100 is not applicable to this case.

## CASE LAW

The first reported decision of this court passing upon the instant question was rendered in 1881 in Roach v. Imperial Mining Co., 7 F. 698. There Judge Hillyer set out Sections 1 and 2 of the wrongful death act of 1871 as follows:

"Section 1. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount, in law, to a felony.

"Sec. 2. The proceeds of any judgment, obtained in any action brought under the provisions of this act, shall not be liable for any debt of the deceased: provided, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child, but shall be distributed as follows: * * * If there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons: provided, every such action shall be brought by and in the name of the personal representative or representatives of such deceased person: and provided further, the jury, in every such action, may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

Judge Hillyer then stated:

"Under this statute there are two causes of action—two grounds upon which a recovery can be had: one for the injury to the deceased, and one for the injury to the kindred named in the act. In the first case the jury may give such damages, pecuniary and exemplary, as they shall deem fair and just; and in the second may take into consideration the pecuniary injury to the kindred named in the act. The use of the words 'pecuniary and exemplary', in the first clause of the proviso, and of the word 'pecuniary', in the last, is significant, and shows that the legislature had both causes of action in view. Otherwise the last clause would serve no purpose. The statute of Nevada is different from any which has come under my observation in this particular, and it is evident that the draughtsman had in his mind certain expressions to be found in some of the cases, and intended to meet them by giving a right of action to the personal representative in which the rule of damages should be the same as it would have been if the deceased had lived and brought it, and in addition to permit the jury to consider the pecuniary loss to the kindred."

In 1902 Judge Hawley, in Peers v. Nevada Power, Light & Water Co., C.C., 119 F. 400, in considering the Nevada wrongful death act, began his opinion as follows:

"An action for the death of an intestate was unknown to the common law, and is of purely statutory origin. The unsatisfactory state of the common law, which denied any right to recover for death due to negligence or wrongful act, led to the passage of statutes giving a right of recovery in such cases. The English act of 1846 (9 & 10 Vict. c. 93), commonly designated as 'Lord Campbell's Act,' so often referred to, has served as a model upon which most of the statutes of the various states of the Union have been enacted. Statutes of this general

character do not merely remove the operation of the maxim, 'Actio personalis moritur cum persona,' but give a new cause of action. The object of all statutes passed in conformity with the general purpose of the Lord Campbell act is to provide the means for recovering the damages caused by that which is in its nature a tort. The death of the party injured ceases to relieve the wrongdoer from liability for damages caused by the death. This is the main purpose and effect of all the statutes upon this subject. Stewart v. [Baltimore & Ohio] Railroad Co., 168 U.S. 445, 449, 18 S.Ct. 105, 42 L.Ed. 537. 'For want of a common-law remedy, statutes vesting in certain designated persons a right of action for injury resulting from death by negligence have been passed in different jurisdictions, and in the case of a death * * * the terms of the statute in force in the particular jurisdiction must be looked to in order to determine the right to sue, the form of action, the parties plaintiff and defendant, the conditions of liability, and the measure of damages.' Patt. Ry. Acc. Law, § 350. It would, therefore, serve no useful purpose to review or refer to many of the cases cited by defendant, because most of them are based upon statutory provisions radically different from the act of this state requiring compensation for causing death by wrongful acts, neglect, or default."

The court then set forth Sections 1 and 2 of the wrongful death act and examined the identical language construed by Judge Hillyer. In doing so, Judge Hawley rejected the conclusions reached by Judge Hillyer:

"I differ with Judge Hillyer in his construction of the act that 'there are two causes of action,—two grounds upon which a recovery can be had,— one for the injury to the deceased, and one for the injury to the kindred named in the act.' A careful reading of the entire act shows that there is but one cause of action, and this is

given in section 1 (3983). The second section (3984) does not provide for another cause of action. It simply provides 'how the proceeds of any judgment' obtained under section 1 shall be distributed, and, after declaring that 'such action [that is, the action based upon the provisions of the first section] shall be brought by and in the name of the personal representative or representatives of such deceased person,' it then further provides that 'the jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named.' This latter clause does not give another cause of action, but provides what proof may be given in the cause of action based upon the provisions of section 1. The first section creates the right of action, and the second section measures the recovery, and declares how the distribution must be made under the right created. There is but one cause of action stated in the complaint, to wit, a cause of action for the death of Frank A. Wells, caused by the alleged 'wrongful act, neglect, or default' of the defendant.

"The intention of the legislature must, of course, be given controlling effect; but in applying the ordinary and well-established canons of construction to be given to statutes it does not seem reasonable that the legislature intended to give two independent causes of action for the same injury, which causes of action would have to be separately stated in the complaint. (Citing cases.) This act is not a 'survival act' in the strict sense of that term. It applies to cases of instantaneous death as well as to cases where the person injured survives the injury for a period of time. In this connection the law is well settled that in all cases where the death is instantaneous—where there is no appreciable length of time between the

injury and the death—there cannot be any recovery for damages for the pain and suffering of the deceased. 8 Am. & Eng.Enc.Law, 866, 892. The statutes that have been passed upon this subject, while preserving the right of recovery, are by no means uniform, either as to the character, kind, or amount of damages, or by whom or for whose benefit they may be recovered. The evident intention of the legislature of this state, as appears from the language of the act itself, was to afford a complete and adequate remedy for the recovery in one action of all damages, whether compensatory or exemplary, which might result from the death of the deceased, and for the distribution of the damages recovered to the persons entitled to the same in the manner described in the second section of the act."

In Perry v. Tonopah Mining Co., decided in 1915, D.C., 13 F.2d 865, Judge Farrington, in discussing the Nevada wrongful death act, stated at page 870:

"The Nevada statute does not profess to continue or revive an action which the injured person might have maintained if death had not ensued. That right of action is extinguished by death. What the statute does give is a new and independent right of action to the kindred who are injured by the death. It is a right of action which has no existence until the death of the injured party, and results therefrom. It makes no account of wrong done to the deceased; it is only concerned with the loss to the relatives."

In Smith v. Odd Fellows Bldg. Ass'n, 46 Nev. 48, 205 P. 796, the Nevada Supreme Court, after quoting with approval from Judge Hawley's decision in Peers v. Nevada Power, Light & Water Co., supra, on a point of law not material here, made these significant statements. I quote from pages 800 and 801 of 205 P.:

"A general allegation of damages is sufficient in an action of this kind. The statute under which this action was prosecuted is in derogation of the common law, at which an action for damages for the death of a person by wrongful act was not maintainable. The first statute to authorize an action of this kind was the English Act of 1841 [1846?] (9 & 10 Vict. c. 93), commonly known as Lord Campbell's Act, and as pointed out by Judge Hawley in Peers v. Nevada Power, Light & Water Co., supra, has served as a model upon which most of the statutes of the various states of the Union have been enacted. In the first case in England in which the point as to a proper averment of damages was raised, it was held that special allegation of damages was unnecessary.

"* * * Appellant knew, or was presumed to know, that the measure of damages would be based upon the pecuniary loss to the kindred named in the complaint."

Later, in the case of Wells, Inc., v. Shoemake, 64 Nev. 57, 177 P.2d 451, after relying upon Judge Farrington's decision in Perry v. Tonopah Mining Co., supra, on a question not of concern here, it stated at page 459 of 177 P.2d:

"Defendants are correct in their statement that the only measure of damages in an action under a wrongful death statute is limited to pecuniary loss suffered by the heirs of the person killed, by reason of his death."

## CONCLUSION

It appears to me that NRS 41.100 is the only statute in Nevada passed in derogation of the common law and providing for the survival of causes of action for personal injuries. It would appear that by enacting such a statute in 1937 the Nevada legislature made clear its intent. Therefore, it cannot be reasonably contended that there is in the wrongful death act a cause of action created to recover damages sustained by the deceased himself.

Further, the conclusion seems inescapable that the plaintiff may not recover damages for the pain and suffering endured by her intestate in the face of the language quoted supra from the Smith

v. Odd Fellows Bldg. Ass'n and Wells, Inc. v. Shoemake cases. In both cases the Nevada Supreme Court held that the measure of damages in a wrongful death action is based upon and limited to the pecuniary loss suffered by the heirs of the person killed. Therefore, I am persuaded that until such time as the Nevada Supreme Court directly rules upon this question or the Nevada legislature states specifically, as California has done (see California Probate Code, § 573), whether there may be awarded in a wrongful death action damages for the pain and suffering endured by the deceased, the only course for this Court to take is to preclude proof of damages for pain and suffering claimed to have been suffered by the deceased.[2]

---

2. I have not overlooked the wrongful death action of Abercrombie v. Sears Roebuck (Case No. A34351, Eighth Judicial District Court of the State of Nevada, in and for the County of Clark), relied upon by plaintiff's counsel. In that case the judge gave an instruction to the effect that the jury could consider the pain and suffering sustained by the deceased. Unfortunately, there was no appeal taken in that case on the question dealt with here. Had there been such an appeal, the federal court would not be compelled to decide a question of state law of such importance before the state's highest court specifically ruled on the point. Nonetheless, with due respect to my state court colleague, I am not persuaded that his view was the correct one.