Gladys SNOW, Individually, and Gladys Snow as Administratrix of the Estate of Randall Alan Chambers, Deceased, Plaintiff,

v.

UNITED STATES of America, Reynolds Electrical and Engineering Co., Inc., Fenix and Scisson, Inc., Lawrence Livermore Laboratories and University of California, Defendants.

No. CIV–LV–79–40, HEC.

United States District Court,
D. Nevada.

Sept. 5, 1979.

Supplemental Decision Nov. 5, 1979.

---

**19.** *Id.* at 625.

I. Russell Phillips, John P. Foley, Las Vegas, Nev., for plaintiff.

Arthur L. Williams, Jr., Las Vegas, Nev., for defendant REECo.

B. Mahlon Brown, U. S. Atty. by William C. Turner, Asst. U. S. Atty., Las Vegas, Nev., Sandra Wien, Simon, James P. Klapps, Mark S. Feldheim, U. S. Dept. of Justice, Civ. Div., Washington, D. C., for defendant U. S.

Leland Eugene Backus, Las Vegas, Nev., for defendants, Fenix and Scisson, Inc.

## DECISION AND ORDER

CLAIBORNE, District Judge.

The within action is before the Court on separate Motions to Dismiss or, in the Alternative, for Summary Judgment, filed on behalf of Defendants United States of America ("the government") and Reynolds Electrical and Engineering Co. ("REECo"). Both Defendants allege that the complaint fails to state a claim, and cannot possibly be amended to do so. With one exception as hereafter mentioned, the facts are undisputed.

On or about February 20, 1978, Randall Alan Chambers was employed as a driller helper at the U19t drillsite location at the Nevada Test Site by Defendant REECo. The government owns the Nevada Test Site and, by and through the Department of Energy, maintains a contract for drilling work with REECo; as such, REECo stands

in the position of an independent contractor.[1] At approximately 7:55 p. m. on the 20th, while performing a routine operational task of removing a sheet of plywood covering the drillsite hole, Chambers fell some 1172 feet to his death.

Plaintiffs allege that the proximate cause of Chamber's death fall was Defendants' failure to analyze or enforce numerous safety standards surrounding this type of work activity. These include the hiring of Chambers despite his limited drilling experience and in contravention to REECo regulations, providing him little or no safety instructions regarding plywood removal, failing to maintain safe footing around the hole by not repairing its metal covers and by not removing ice, mud, grease and snow from the covers, failing to wear or require the wearing of mandatory safety belts around the hole, and the apparent nonposting of adequate warning signs regarding the necessity of wearing safety belts.

The affidavits and exhibits surrounding this motion indicate that on February 20, 1978 REECo was authorized to maintain appropriate Worker's Compensation coverage, the costs of which were allowable and were in fact paid by the Department of Energy to REECo pursuant to a contract between said parties. According to the affidavit of Kenneth Johnson, claims manager for the Nevada Industrial Commission, the accident was reported to the N.I.C. and the N.I.C. paid compensation in the form of funeral expenses to the Estate of Chambers.[2] According to the affidavit of Gladys Snow, Plaintiff herein, the funeral burial expenses of her son were accepted by Palm Mortuary, but she never directed Palm Mortuary to accept said expenses, ratified the acceptance thereof, or personally filed a claim on behalf of her deceased son against the N.I.C.

Plaintiff, the administratrix of the Estate of Chambers and mother of the deceased, filed a claim with the government on August 14, 1978, in accordance with 28 U.S.C. § 2672 and 10 C.F.R. Part 14, which was subsequently denied. Thereafter, she filed the within action under the Federal Torts Claims Act (28 U.S.C. § 2671), alleging jurisdiction under 28 U.S.C. § 1346(b), which states:

. . . [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The parties are in agreement that 28 U.S.C. § 1346(b) means that this Court is to apply Nevada law to these facts and, since the accident undisputably occurred while the deceased was acting in the scope and course of his employment, the Nevada law to be applied is the Nevada Industrial Insurance Act (NIIA), or N.R.S. ch. 616. It is the basic contention of the government and REECo that this lawsuit cannot be maintained as a matter of law because Plaintiff's entitlement to death benefits under the NIIA constitutes her exclusive remedy.

As to the Defendant REECo, the deceased's employer at the time of the accident who was covered under the NIIA, the Nevada Supreme Court outlined its duties and liabilities in *Outboard Marine Corp. v. Schupbach*, 93 Nev. 158, 561 P.2d 450 (1976):

Employers who accept the [Nevada Industrial Insurance] Act and provide and secure compensation for injuries by acci-

1. It is well settled that REECo's relationship to the government at the Nevada Test Site is that of an independent contractor. See *Wimberly et al. v. Reynolds Electrical Engineering Co., Inc., et al.*, Civ. 609 (D.Nev.1966); *McGarry v. United States*, 370 F.Supp. 525, 529 (D.Nev. 1973).

2. Due to the relationship between Mrs. Snow and Mr. Chambers, the sole death benefits to which Plaintiff was entitled was funeral expenses under NRS § 616.615(1).

dent sustained by an employee arising out of and in the course of employment are 'relieved from other liability for recovery of damages or other compensation for such personal injury . . .' NRS 616.270. This provision, of course, forbids suit by the injured employee against his employer. [cites omitted] This "exclusive remedy" provision of the Act is exclusive in the sense that no other common law or statutory remedy under local law is possessed by the employee against his employer. [cites omitted]

561 P.2d at 454. The only difference between *Schupbach* and the case at bar is that the former applied the exclusivity principle to a disabled worker covered under the act, while this case involves entitlement to death benefits. The distinction is without a difference, however; N.R.S. 616.370(1) specifically states that the rights and remedies provided in Chapter 616 for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive of all other rights and remedies of the employee's personal or legal representatives.

As to the government, three cases directly support their argument of exclusivity. In *Frith v. Harrah South Shore Corp.*, 92 Nev. 447, 552 P.2d 337 (1976), an employee of a construction company who had contracted with Harrah's for some construction work was injured while working on Harrah's property. After the accident he received workers compensation, but thereafter sued Harrah's. The Nevada Supreme Court affirmed the trial court's judgment for Harrah's, and held that where an owner of property on which a construction worker was injured is the principal contractor and therefore the principal employer of the injured worker,[3] and the construction company is the bona fide employer of the worker who was injured in the scope and course of employment, an award of compensation under the NIIA constitutes the worker's exclusive remedy. 552 P.2d at 341.

The Nevada Supreme Court's decision applied to private individuals, of course, but this Court more recently applied the same principles to the government in the context of an action filed under the Federal Torts Claims Act. In *Barker v. Luna*, 439 F.Supp. 810 (D.Nev.1977), an employee of a construction company who had entered into a construction contract with the Small Business Administration of the United States government for some construction work was injured in the course and scope of employment. The *Barker* Court denied judgment in favor of the government in that case for the reason that neither the prime contractor nor the subcontractor had procured industrial insurance for the plaintiff, but in so doing noted that the case of *Roelofs v. United States*, 501 F.2d 87 (5th Cir. 1974) accurately stated the law as to the "converse" situation (i. e., where industrial insurance has been procured at the time of the accident), since both the compensation statutes in the *Roelofs* case and the NIIA make compensation under the act "the sole remedy against any employer." 439 F.Supp. at 813.

*Roelofs* is indistinguishable from the case at bar. In that case, an employee of Sperry Rand, who had a government contract with the United States Army and thereunder operated an army ammunition plant on government-owned land, was injured in the scope and course of employment. The government-Sperry contract obligated Sperry to provide its workers with workmens compensation coverage and the government to reimburse Sperry therefor. Such coverage was obtained and in effect at the time of the accident. The Fifth Circuit reversed an order of summary judgment for the employee, holding that inasmuch as compensation coverage had been procured, the government was entitled to the same immunity as a private state employer under the state worker's compensation statutes. 501 F.2d at 93–94. The implication of *Roelofs* and *Barker*, then, is that the Nevada Supreme Court's decision in *Frith* would be every bit as applicable to the government, where the government is in the position of a "principal contractor," as it was to Harrah South Shore Corp.

3.  See N.R.S. § 616.085; N.R.S. § 616.115.

Plaintiff argues that this is not the appropriate law to apply, however, for two reasons: 1) There presently exists a question of fact as to whether Plaintiff rejected the N.I.C.'s award in this case; if she did not, she contends, then she may bring this lawsuit since the NIIA would no longer apply to the situation at bar; 2) The NIIA does not apply where the work is extrahazardous in nature, as was the situation at bar.

■ The California Court of Appeals, applying Nevada law in a "conflict-of-laws" case, directly rejected Plaintiff's first argument in *Howe v. Diversified Builders, Inc.,* 262 Cal.App.2d 741, 69 Cal.Rptr. 56 (1968). The *Howe* court held that a purported rescission and waiver of benefits after the same were paid out was meaningless; the court construed N.R.S. § 616.270(2) in that situation to mean that once the employer complies with the provisions of the NIIA, the employees are not given the right to accept or reject the terms of the act. 262 Cal.App.2d at 747, 69 Cal.Rptr. 56.

■ As to the second argument, Plaintiff cites no authority for the proposition that Chapter 616 of the Nevada Revised Statutes does not apply to accidents in the course of and arising out of employment which is ultrahazardous in nature. To accept this argument, this Court would have to strain Chapter 616 in a most unnatural manner. First of all, liability in connection with ultrahazardous activity is tantamount to liability without fault; however, N.R.S. § 616.020 defines a compensable "accident" to be one which, inter alia, occurs with or without human fault. Secondly, N.R.S. § 616.055 defines "Employee" and "workman" in the broadest possible terms, and the list of "Exclusions" thereon in N.R.S. § 616.060 does not include any person engaged in ultrahazardous activity. Thirdly, N.R.S. § 616.090 defines "employer" in the broadest possible terms. It would seem to me that the only real effect which extrahazardous employment has under the Act is that it increases the industrial insurance premiums which the employer has to pay. Cf. N.R.S. § 616.395.

Plaintiff supports this second argument on the basis of *McGarry v. United States,* 370 F.Supp. 525 (D.Nev.1973). *McGarry* involved a REECo employee who was electrocuted at the Nevada Test Site. This Court held the government liable under the Federal Tort Claims Act, principally on the theory that the work involved was dangerous and the government, as the employer of the independent contractor REECo, owed a nonvicarious nondelegable duty to the contractor's employees while performing such work. 370 F.Supp. at 564. That fifty page decision covers the United States' potential liability under 28 U.S.C. § 2671 et seq. in just about every imaginable situation except the situation at bar—where the employment is covered by industrial insurance; there are no facts in that case which would indicate that an N.I.C. award was made on behalf of the Plaintiff therein. In that respect, then, *McGarry* is entirely consistent with *Barker v. Luna, supra,* and does not have any bearing on this case, especially since the N.I.C. award in the case at bar did not turn on whether REECo was an employer as opposed to an independent contractor, but whether REECo was a subcontractor of a principal contractor. Cf. N.R.S. § 616.085.

As I see it, the situation at bar at present is this: if I were to apply chapter 616 of the Nevada Revised Statutes and the aforementioned cases construing said chapter to the case at bar, I would have no choice but to grant the Defendants, Motions to Dismiss or, in the Alternative, for Summary Judgment and dismiss the action with prejudice as to those two Defendants. I am not yet convinced that the law should be applied so mechanically to this case, for the following reason:

If I assume for the sake of argument that these Defendants wrongfully caused the death of Chambers, and if I assume for the sake of argument that the accident was not work-related, then Plaintiff herein has standing to sue for wrongful death, as she is the personal representative of the deceased under N.R.S. §§ 41.080 and 41.100, and may recover damages for loss of proba-

ble future companionship, society and comfort of her son. Cf. N.R.S. § 41.090; *Borrego v. Stauffer Chemical Co.*, 315 F.Supp. 980, 985–986 (D.Nev.1970). In other words, it would seem to me that in the non-work related accident situation, the only procedural bar Mrs. Snow would face would be to prove that she is in fact the legal representative of the deceased. However, if I assume for the sake of argument that the accident was in fact work-related, then N.R.S. § 616.615(6) requires Mrs. Snow to prove that she was wholly dependent upon Chambers for support at the time of the accident in order to be entitled to death benefits; unless she can prove this, she is barred procedurally under the NIIA from obtaining anything other than funeral expenses.

The question which bothers me is this: Does the Nevada legislature have a rational basis for concluding that the legal representative of a deceased need not prove that she is wholly dependent upon the deceased for support in the *non-work-related* accident situation, but that the same representative must prove that she is wholly dependent upon the deceased for support in the *work-related* accident situation? Or, has the Nevada legislature acted arbitrarily and capriciously in making that distinction, in violation of Plaintiff's Fourteenth Amendment rights? I do not have a ready answer to my own question. Therefore, it is the order of the Court that the parties follow this procedure:

1) Within twenty days of service of this Decision and Order, Plaintiff shall file and serve supplemental Points and Authorities on the issue raised herein by this Court, plus any other issue not already decided herein;

2) Within twenty days of service of said supplemental Points and Authorities, Defendants and any of them shall file and serve supplemental Points and Authorities in response; and

3) Thereafter, the matter shall stand resubmitted.

SO ORDERED.

## SUPPLEMENTAL DECISION

On May 15, 1979, Defendants United States of America and Reynolds Electrical and Engineering Co. ("REECo") filed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. Both Defendants alleged that this wrongful death action under the Federal Tort Claims Act is barred by the "exclusivity principle" of the Nevada Industrial Insurance Act, meaning that Plaintiff's sole remedy in the case at bar is relegated to whatever she can recover under said act. On August 31, 1979, this Court rendered an interlocutory decision, in which I agreed with the Defendants in their interpretation of the relevant provisions of the N.I.I.A. and case law construing the same. However, because of the fact that Plaintiff in this case is limited to recovery of funeral expenses for the death of her son, due to the fact that she was not "wholly dependent" upon him within the meaning of N.R.S. § 616.615(6), I ordered the parties to submit additional briefs on the issue of whether the Nevada Legislature acted arbitrarily and capriciously in propounding a statute which has the effect of leaving this Plaintiff without an adequate remedy. The parties have submitted additional briefs on this issue, and the Court now renders the following supplemental decision:

As early as 1917, the United States Supreme Court extensively examined the theory behind workers' compensation law in *New York Central Railroad Co. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917). The Court examined the workers' compensation laws of the State of New York from many different angles and found them not to be unconstitutional. The Court found many rational bases for doing away with employer-employee litigation based upon a system of fault and substituting in its stead a no-fault system designed only to compensate the worker for his or her loss of earning power. The Court also mentioned in passing, however, that death benefits under the pertinent statute were to be measured according to the dependency of the deceased worker's survivors. 37 S.Ct. at 252. Although the *White* Court did not

state as such, the rational basis for requiring dependency as a prerequisite for recovery of workers' compensation death benefits is clear: the purpose of the workers' compensation system is to compensate the injured worker for his loss of earning power, (*Id.* at 255) and it follows therefrom that when the worker dies as a result of an industrial accident, the ones who are directly affected by his or her loss of earning power are those who were dependent upon his or her wages while s/he was alive.

This also was the reasoning of the Colorado Supreme Court in *Ryan v. Centennial Race Track, Inc.*, 580 P.2d 794 (Colo.1978), a case very similar to the one at bar. In *Ryan*, the decedent, who was employed by the defendant, was fatally injured in an elevator accident while in the course and scope of his employment. Since the defendant was covered under the state industrial insurance act, the state industrial accident commission paid the plaintiff, decedent's father, $1,000 in funeral benefits. However, the commission paid no death benefits because it found that plaintiff had not been financially dependent upon his son as a matter of law. Plaintiff brought a wrongful death action against defendant, but the Colorado Supreme Court held that the action was barred by the "exclusive remedies provisions" of the Colorado Workers' Compensation Act. 580 P.2d at 797. In arriving at that conclusion, the Court stated:

> . . . the dependency requirement [is] rationally related to the purposes of the Workmen's Compensation Act. Since workmen's compensation recovery, unlike tort recovery, is directly related to the loss of an employee's earning capacity and support for those financially dependent upon the deceased employee, . . . those not financially supported by a deceased employee suffer no compensable loss with his death.

580 P.2d at 797, citing *Mullarkey v. Florida Feed Mills, Inc.*, 268 So.2d 363 (Fla.1972), *appeal dismissed*, 411 U.S. 941, 93 S.Ct. 1923, 36 L.Ed.2d 406 (1973).

The constitutionality of the result at bar was explained in a different way in another similar case, *Leech v. Georgia-Pacific Corporation*, 259 Or. 161, 485 P.2d 1195 (1971). In the *Leech* case, the Plaintiff, a twenty-eight year old incompetent since birth by reason of mental retardation, brought a wrongful death action against her father's employer. Her father was killed in an industrial accident, during which time defendant was covered under the state's workers' compensation act. Although plaintiff was totally dependent upon her deceased father, she was not eligible for compensation death benefits under the relevant statute because she was greater than eighteen years of age. The Oregon Supreme Court held that she was barred from bringing the wrongful death action, even though she received no benefits from the state's industrial accident commission, because the defendant had complied with its statutory duties to provide compensation coverage for its employees, thereby relieving itself of all other liability for said industrial accident. 485 P.2d at 1196–1197. In justifying the constitutionality of this result, the *Leech* court quoted from the Supreme Court decision of *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' [cites omitted] 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical [though] it may be, and unscientific.' [cites omitted] 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' [cites omitted]

485 P.2d at 1199.

The constitutionality of the result at bar was explained in still another way in another very similar case, *West v. Zeibell*, 87 Wash.2d 198, 550 P.2d 522 (1976). In the

*West* case the parents brought an action to recover for the wrongful death of their minor son, who was electrocuted while working at a laundromat. The parents were in no way dependent upon the decedent and therefore not entitled to any remedy under the State of Washington's workers' compensation act. The Washington Supreme Court held that the workers' compensation statutes constituted the parents' exclusive remedy, thereby barring the parents' action for wrongful death. 550 P.2d at 523–524. In justifying the constitutionality of this result, the Washington Supreme Court explained:

. . . there can be no vested right, however, in a tort action [wrongful death action] that can be brought only by virtue of a statute. [cite omitted] The Fourteenth Amendment does not prevent a state from amending or entirely abolishing statutory remedies. [cites omitted] Accordingly, the legislature is free to bar plaintiffs' right to recover for wrongful death . . . without offending due process and equal protection guarantees. [cite omitted]

550 P.2d at 524–525.[1]

The constitutionality of the result at bar was explained in yet a fourth way in yet another similar case, *Stample v. Idaho Power Co.*, 92 Idaho 763, 450 P.2d 610 (1969). In *Stample*, the worker was electrocuted while working for defendant on a mobile line crew which was energizing a new substation. Plaintiffs, the decedent's parents, filed a claim with the Idaho Industrial Accident Board, which was denied on the ground that they were not "dependents" within the meaning of the state's industrial insurance act. Plaintiffs then brought a wrongful death action against the defendant, and the Idaho Supreme Court held that the action could not be maintained since the act's purpose and intent was to remove all industrial accident cases from the courts. 450 P.2d at 612. In justifying this result the Idaho Supreme Court stated:

And lest it be argued that this rule of law may in some cases deprive persons of a remedy for damages which they had prior to the passage of the Workmen's Compensation Law, we note that that law has a dual policy, as stated in *Smither & Co. v. Coles*, 100 U.S.App.D.C. 68, 242 F.2d 220 (1957): 'The purpose of these laws was to provide "not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinative." Thus, anything that tends to erode the exclusiveness of either the liability or the recovery strikes at the very foundation of statutory schemes of this kind, now universally accepted and acknowledged.'

450 P.2d at 613.

In response to this, however, Plaintiff tenders two arguments: 1) The effect of the Nevada Industrial Insurance Act is to take away her right to sue under the Nevada Wrongful Death Act without substituting an adequate alternate remedy, thereby depriving her of due process of law; 2) Since Plaintiff was not paid anything which reasonably could be labeled as "compensation," the Nevada Industrial Insurance Act does not apply to her and therefore she may sue for wrongful death. The *West* and *Stample* Courts rejected the first argument, as did the Fifth Circuit in construing Alabama law in *Patterson v. Sears-Roebuck & Co.*, 196 F.2d 947, 949 (5th Cir. 1952). The Utah Supreme Court rejected the second argument in *Henrie v. Rocky Mountain Packing Corp.*, 113 Utah 415, 196 P.2d 487 (1948). In the *Henrie* case, the deceased, a sixteen-year old boy, was electrocuted when he attempted to operate a freight elevator owned and operated by the defendant during the course and scope of his employment. At the time of his death the defendant had procured industrial accident coverage and the deceased left only the plaintiffs, his nondependent parents, as his next of kin. The State Industrial Commission ordered defendant to pay $1,000

1. As in the State of Washington, survival and wrongful death actions in the State of Nevada are purely creatures of statute. Cf. *Davenport*

*v. State Farm Mutual Auto Ins., Co.*, 81 Nev. 361, 404 P.2d 10 (1965); *Borrego v. Stauffer Chemical Co.*, 315 F.Supp. 980 (D.Nev.1970).

into the state treasury and $150 as and for funeral expenses, and no other payments. Plaintiffs brought an action for wrongful death and the Utah Supreme Court held that the money paid by defendant pursuant to the Industrial Commission's orders constituted "compensation" and, as such, constituted the parents' exclusive remedy and denied them the right to bring a wrongful death action. 196 P.2d at 493–494.

While the Nevada Supreme Court has never ruled upon the constitutionality of N.R.S. § 616.615, it looks to decisions of sister states for evidence as to what the common law is in determining the existence of a right of action. Cf. *Costley v. Nevada Industrial Insurance Commission*, 53 Nev. 219, 296 P.2d 1011 (1931). As has been discussed, the overwhelming authority of Nevada's sister states is that their statutory counterparts to N.R.S. § 616.615 and § 616.-270 are constitutional. See also *Shanahan v. Monarch Engineering Co.*, 219 N.Y. 469, 114 N.E. 795 (1916); *Jordan v. Delta Drilling Co.*, 541 P.2d 39, 48–49 (Wyo.1975). Accordingly, the same result must attach in the case at bar.[2]

In the Court's August 31 Decision and Order I ordered that Plaintiff could raise any other points not previously decided. She has raised two additional points. First, she requests a reconsideration of the Court's prior order viz. the applicability of the Nevada Industrial Insurance Act with respect to the Government, arguing that the cases of *Frith v. Harrah South Shore Corp.*, 92 Nev. 447, 552 P.2d 337 (1976), *Barker v. Luna*, 439 F.Supp. 810 (D.Nev. 1977) and *Roelofs v. United States*, 501 F.2d 87 (5th Cir. 1974) are inapplicable. It is still the Court's position, however, that those cases—especially *Roelofs*—control. Addi-

tionally, I would add this point: Plaintiff concedes—indeed, points out—that under the Government-REECo contract on file herein the Government has the right to stop all work at the Nevada Test Site if REECo should fail to enforce safety regulations. In effect, then, Plaintiff admits that the Government as landowner of the Nevada Test Site retains a degree of control over the activities of the contractor REECo; this makes the Government a "principal contractor" and "principal employer" as a matter of law within the meaning of N.R.S. § 616.085, N.R.S. § 616.115 and the *Frith* decision. Cf. *Titanium Metals Corporation of America v. Eighth Judicial District Court*, 76 Nev. 72, 349 P.2d 444, 445 (1960).

Secondly, Plaintiff argues that N.R.S. § 616.510 denies her due process of law for this reason: § 616.510(2) provides that the determination of the status of dependents and extent of dependency are fixed as of the date of accident or injury to the employee, regardless of any subsequent events. She argues that if her husband subsequently should die, then the effect of N.R.S. § 616.510(2) is to undercut the rationale behind N.R.S. § 616.615(6) in an arbitrary fashion and leave her without any remedy whatsoever. Clearly, since Mr. Snow is alive and well, this contention is not ripe for adjudication.

Accordingly, then, I find no choice but to grant the Motions to Dismiss or, in the Alternative, Motions for Summary Judgment, and dismiss the action with prejudice as to Defendants United States of America and Reynolds Electrical and Engineering Co. An order shall be entered concurrently herewith, and the foregoing plus the Decision and Order dated August 31, 1979 shall constitute the Court's Findings of Fact and Conclusions of Law.

---

2. N.R.S. § 616.615(6) requires that a parent be *wholly* dependent for support upon the deceased employee in order to obtain compensation benefits. It would be an interesting question as to whether the requirement of "whole" dependence would be palpably arbitrary as applied to a parent who was more than 50% but less than 100% dependent upon the deceased employee. However, this Court need not reach this question because that is not the situation at bar. The affidavit of Kenneth R. Johnston,

claims manager for the Nevada Industrial Commission, establishes that Plaintiff was not dependent in any way whatsoever upon the earnings of Randall Alan Chambers at the time of Chambers' death. As has been stated many times in this Opinion, the State Legislature may, without violation to the Fourteenth Amendment, deny workers' compensation death benefits to one who is not a dependent of the deceased employee.