George W. **STACEY**

v.

**UNITED STATES** of America, American Insurance Company and Chrysler Corporation.

**Civ. A. No. 13569.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 3, 1967.

Albert J. Huddleston, New Orleans, La., for plaintiff.

Gene S. Palmisano, Asst. U. S. Atty., for the United States.

William A. Porteous, Jr., and Lloyd C. Melancon, New Orleans, La., for defendant American Ins. Co.

Felicien F. Lozes, New Orleans, La., for intervenor Employers Liability Assur. Corp.

Ralph L. Kaskell, Jr., and John F. Tooley, Jr., New Orleans, La., for third-party defendant Welding & Mfg. Co.

C. B. Ogden, II, New Orleans, La., for Chrysler Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CHRISTENBERRY, Chief Judge.

This proceeding was brought by the Plaintiff, George W. Stacey, against the United States of America pursuant to the Federal Tort Claims Act, and also against the American Insurance Company and Chrysler Corporation. The United States of America as third party plaintiff brought in Welding and Manufacturing Company as third party defendant. The case so far as it related to the United States was tried to the Court on November 14th, 15th, and 16th, 1966, and the Court having heard the evidence and the arguments of counsel makes findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1.

The authority for this proceeding against the United States of America is the Federal Tort Claims Act, 28 U.S.C. Sections 1346, et seq. Venue was properly laid in the United States District Court for the Eastern District of Louisiana, New Orleans Division.

2.

The Plaintiff seeks to recover against the United States for his injuries on the theory that the United States is the owner of the premises at the Michoud Facility, New Orleans, Louisiana. More specifically, the Plaintiff contends that the United States had a duty to super-vise the safety program and that they knew or should have known that there was smoke and fumes in the area in which the Plaintiff was working and that the lighting was inadequate in that area, and further, that this was a proximate cause of the accident.

3.

On January 15, 1963 at approximately 8:00 P.M., plaintiff, an iron worker, fell about forty feet from scaffolding through a transite duct while working as a member of the "raising gang", in the course of reinforcing the roof trusses of the Michoud Plant.

4.

At the time of plaintiff's fall, he was employed by, and working within the course and scope of his employment for, Welding and Manufacturing Company, a Division of Dixie Machine Welding & Metal Works, Inc. (W & M).

5.

W & M entered into a contract directly with the United States of America, on September 25, 1962, Contract No. NAS8–5523 wherein W & M undertook the job for the modification of the roof trusses at the Michoud Plant. This contract called for "Truss Modifications (Phase I)", and incorporated by reference the "George C. Marshall Space Flight Center Specification No. FE–D–312 entitled 'Specifications for Truss Modifications' (Phase I) Michoud Plant, New Orleans, Louisiana."

6.

Mason-Rust a joint venture, entered into a contract with the United States of America, on December 29, 1961, Contract No. NAS8–4004, as a support service contractor.

7.

By virtue of Contract No. NAS8–4004, and particularly Appendix P thereof, Mason-Rust took over the obligation for safety responsibilities and supervision.

8.

Leonard Zichichi, safety engineer of Mason-Rust, testified that he was unaware of the provisions of the contract

wherein Mason-Rust was to provide safety controls and supervise the general safety of all construction within the Michoud Plant.

9.

Mason-Rust, by virtue of the above contract had the obligation and duty to supervise safety in the Michoud Plant, and Mason-Rust failed and neglected to perform its duty in connection with safety supervision.

10.

It was the duty of Mason-Rust safety engineer to act in accordance with the requirements and regulations set forth in the said contract, and to comply with the provisions of the Mason-Rust Safety Program (Ex. P–24); and the Mason-Rust safety engineer did not perform his duties in accordance with the contractual obligation of Mason-Rust and in accordance with Mason-Rust's own safety program.

11.

Furthermore, there is a finding that there was no smoke or fumes on the night of the accident. The Plaintiff himself did not testify that there was smoke or fumes on the night of the accident.

12.

The lighting in the area where the Plaintiff was working was adequate. No complaints were made that the lighting was inadequate.

13.

It is clear that the allegations made by the Plaintiff that there was smoke and fumes and poor lighting are not supported by the evidence and, therefore, certainly not a proximate cause of this accident.

14.

The transite air-conditioning duct was not made for the purpose of supporting weight, but its purpose was to conduct cold and hot air throughout the entire Michoud Facility. The Plaintiff knew that the duct would not support the weight of a man, and had been warned about this on a number of occasions, in-cluding the night of the accident when he was specifically warned not to step on the transite ducting.

15.

There has been no showing of any breach of duty or negligence on the part of any employee, agent or servant of the United States of America.

16.

It was necessary for the National Aeronautics and Space Administration to perform or have performed the work for the modification of the roof trusses in the Michoud Plant in order to put the plant into such a condition so that it would be a plant capable of housing the manufacturers of space vehicles and components, such as Chrysler Corporation.

17.

The United States required W & M under Part III of the "Special Conditions," to procure and maintain, during the entire period of performance under the contract, Workman's Compensation and Employer's Liability insurance, and under these same provisions of the contract, W & M had to furnish evidence of a commitment by the insurance company to notify the government contracting officer of any change or cancellation of that insurance; and W & M had to be certain that its insurance covered all sub-contractors or provide evidence that the sub-contractors had similar coverage.

18.

The construction and modification work being done by W & M at Michoud was part of the business and occupation of NASA, and a part of its regular business activities. NASA had control over the aeronautical and space activities of the United States. This appears from the modification contract with W & M itself as well as from the stated declarations of the Congress.

CONCLUSIONS OF LAW

1.

This Court has jurisdiction of the subject matter and the parties to this action

by virtue of the Federal Tort Claims Act, 28 U.S.C.A. section 1346(b).

2.

█ The accident and resultant injuries suffered by plaintiff were not the result of any negligence on the part of defendant, United States of America, or any of its employees, agent and servants. No action or inaction on the part of agent or employees of the United States was a proximate cause or contributed to the accident and resulting injuries suffered by the plaintiff.

3.

By statute the Congress declared that a civilian agency should control aeronautical and space activities of the United States. 42 U.S.C. § 2451(b).

4.

The purpose of the National Aeronautics and Space Administration (NASA) is to carry out aeronautical and space activities. 42 U.S.C. § 2473(a). In the performance of its functions NASA is authorized "to acquire * * * construct, improve, repair, operate, and maintain laboratories, research and testing sites and facilities, aeronautical and space vehicles, quarters and related accommodations for employees and dependents of employees of the Administration, * * * as the Administration deems necessary within and outside the continental United States * * *". 42 U.S.C. § 2473(b) (3). NASA has the authority to enter into contracts "or other transactions as may be necessary in the conduct of its work". Id., Subsection (5).

5.

With respect to the Michoud Plant, the NASA Authorization Act for the fiscal year 1963 (July 1, 1962 to June 30, 1963) provided that: "There is hereby authorized to be appropriated to the National Aeronautics and Space Administration * * * as follows:

(b) For 'construction of facilities', $786,237,250, as follows: * * *

(11) Michoud Plant, New Orleans, Louisiana, $18,400,000.00."

Under that appropriation act it was further provided that: "Until such time as the National Aeronautics and Space Administration shall establish uniform design criteria and the construction standards for facilities for which appropriations are authorized pursuant to this Act, the National Aeronautics and Space Administration shall to the fullest extent practicable utilize for such facilities design criteria and construction standards established either by the General Services Administration, the United States Navy Bureau of Yards and Docks, or the United States Army Corps of Engineers." 1962 U.S. Code Congressional and Administrative News, p. 443, 76 Stat. 382, Public Law 87–584.

6.

Under Section 3 of the Appropriations Act for the fiscal year 1963, it is provided that certain other funds "so made available may be expended to acquire, construct, convert, rehabilitate, or install permanent or temporary public works, including land acquisition, site preparation, appurtenances, utilities, and equipment." Ibid.

7.

The Acts of Congress of the United States has established as a matter of law that the work which was being carried on by W & M on behalf of the United States, through NASA, on January 15, 1963 was part of the regular business activities of NASA, and was within the function or "usual trade, business or occupation" of NASA, within the meaning of the Louisiana Workmen's Compensation Act. National Aeronautics and Space Act of 1958, 42 U.S.C. § 2451 et seq., 2473(3) and (5).

8.

Louisiana RS 23:1061 provides "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and the contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole

or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which it would have been liable to pay if the employee had been immediately employed by him;".

9.

■ The Louisiana Workmen's Compensation statute is applicable to federal properties. 40 U.S.C. § 290.

10.

■ The United States of America, through the National Aeronautics and Space Administration (NASA) is, under the Louisiana Workmen's Compensation Act (RS 23:1061), a statutory employer of plaintiff, and like a private individual under like circumstances the United States would be a principal under the Louisiana Workmen's Compensation Act, and protected in the same manner and to the same extent as an employer, by the exclusive benefits provided therein. Travelers Insurance Company v. Brown, 338 F.2d 229 (CA5–1965); Daigle v. American Insurance Company, 234 F.Supp. 43 (ED La.–1964); Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950); Isthmian S S. Co. of Delaware v. Olivieri, 202 F.2d 492 (CA5–1953); Palmer v. Willemet-Stouse Electric Company, 183 So.2d 373 (La. App.4–1966), writs refused, 249 La. 67, 184 So.2d 736 (1966); Sanderson v. Binnings Construction Company, 172 So.2d 721 (La.App.4–1965); 28 U.S.C. §§ 1346(b), 2674.

11.

Even if there were negligence on the part of the United States or any of its agents, employees or servants (which is not the case), the United States cannot be held liable to plaintiff or any third-party complainant or cross-claimant since it was the statutory employer of plaintiff. Sanderson v. Binnings' Construction Company and other cases cited above.

12.

Judgment has been entered for the defendant, the United States of America, against plaintiff and all cross-claimants, dismissing plaintiff's complaint and all cross-claims against the United States of America.

13.

Judgment has been entered dismissing the third party complaint of the United States of America against Welding and Manufacturing Company, a Division of Dixie Machine Welding and Metal Works, Inc. as being moot.