**Albert ROELOFS, Jr., et al.,
Plaintiffs-Appellees,**

v.

**UNITED STATES of America et al.,
Defendant-Appellant,**

**The Travelers Insurance Company,
Intervenor.**

No. 72-3475.

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1974.

Donald E. Walter, U. S. Atty., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., Morton Hollander, Chief, Appellate Sec., James C. Hair, Michael Kimmel, Attys., Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendants-appellants.

Wilton H. Williams, Jr., Shreveport, La., for intervenor, Travelers Ins. Co.

Kenneth Rigby, Shreveport, La., for Roelofs.

Jack C. Benjamin, New Orleans, La., for Durham.

L. L. Lockard, Shreveport, La., for Montgomery et al.

James J. Thornton, Jr., Nesib Nader, Hugh M. Stephens, Shreveport, La., for Tewell et al.

Donald R. Miller, Paul R. Mayer, Shreveport, La., for Thomas et al.

Lewis Weinstein, Shreveport, La., for McKinney, Peterson, Holland and Jackson.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

BROWN, Chief Judge:

This interlocutory appeal raises an interesting and novel problem under the

Federal Tort Claims Act.[1] The question is whether the Government may invoke a defense available to private employers under the Louisiana Workmen's Compensation Statute despite the fact that the United States, due to its preeminent sovereign immunity, could not be compelled to comply with the obligations of a private employer under the statute. The District Judge held that to permit the Government to raise the defense envisioned by the statute was the equivalent of the Government subjecting itself to suit under a local compensation system—an unauthorized waiver of sovereign immunity not contemplated by Congress. He rejected the defense. Disagreeing with these conclusions, we reverse.

To bring the problem closer to earth it is one of harmonizing the FTCA and the Louisiana Compensation Act. Under FTCA the tort liability of the Government is extended to tort claims for negligent damage to person or property "under circumstances where the United States, if a private person, would be liable . . . in accordance with the law . . ." of the place of the tort.[2] Tied as it is to liability of a private actor under local law, the case brings in famed § 6 of the Louisiana Compensation Act.

§ 6[3] imposes on the party for whom work is being done by a contractor (or subcontractor) the obligation of paying workmen's compensation to an injured employee of such contractor/subcontractor. The key is whether in the work at hand the contractor/subcontractor is doing work ". . . which is a part of [the] trade, business, or occupation" of the party for whom the contracted work is being performed.

But while Louisiana, so its courts have many times said, adopted this device as a means of subverting the payment of compensation through the device of impecunious contractors[4], its sig-

---

1. 28 U.S.C.A. § 1346.

2. 28 U.S.C.A. § 1346 provides:
   *United States as defendant*
   * * * * *
   (b) * * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
   * * * * *
   In addition the liability of the United States is set out in 28 U.S.C.A. § 2674:
   The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
   * * * * *

3. La.Rev.Stat. 23:1061 that provides:
   *Principal contractors; liability*
   Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
   Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

4. See the oft-cited and many times court-approved comment by Professor Malone
   "All the provisions of Section Six make clear the fact that the sole purpose of

nificance here is not in an asserted right by the claimants to recover Louisiana Compensation payments from the Government. Indeed, that is the last thing wished, hoped or prayed for. Rather it is that under Louisiana jurisprudence § 6 in imposing a vicarious liability for compensation payments clothes that party with the status of a "principal" or more descriptively, a "statutory employer," so that it will not constitute a suable "third person" under the provisions of the Act permitting suit by an employer (or his carrier) or an employee where the injury/death has been caused by the negligence of another.[5]

This immunity to third party suit, presumably the creature of judicial interpretation of § 6,[6] has survived the direct assault of the organized Louisiana plaintiffs bar[7] and stands as a lion in the street unless on minute facts the case is outside the "usual, trade, or business."

■ The significance of all of this here is that since the Government neither had nor was subject to an enforceable obligation to procure Louisiana compensation insurance,[8] for it to have the Louisiana judge-made § 6 third party immunity would be, the claimants

---

this section is to prevent the evasion of compensation . . .. As between the principal and the contractor, it is fair that the latter, as the employer of the claimant, should bear the risk of accident. For this reason, the principal who is made liable under Section Six is entitled to indemnity and he can interplead the contractor and demand judgment over against him. The net effect is that the principal merely lends his solvency to the worker's claim, and he can effectively protect himself in advance either by satisfying himself that the contractor is solvent or by insisting that the latter insure against work accidents."

Malone, Principals Liability for Workmen's Compensation to Employers of Contractors, 10 La.L.Rev. 25 (1949).

We struggle with this problem in countless diversity and amphibious—ambiguous maritime situations, generally about whether the operational activity is, or is not, "part of [the] trade, business, or occupation." See one of our leading cases : Arnold v. Shell Oil Co., 5 Cir., 1970, 419 F.2d 43 and others, e. g. Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir., 1970, 429 F.2d 1033, 1040–1042.

5. La.Rev.Stat. 23 :1101

§ 1101. *Employee and employer suits against third persons causing injury; effect on right to compensation*

When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim ·compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured

employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.

Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent.

6. The Government brief informs us that 44 states now have statutory employer provisions in their workmen's compensation statutes (2 Larson's Workmen's Compensation, § 72.31, p. 189 (1970 ed.). Except possibly for Kirk v. United States, D. Idaho, 1954, 124 F.Supp. 233, rev'd, 9 Cir. 1956, 232 F.2d 763, no case out of Louisiana has been cited showing that other jurisdictions read the third party immunity into their statutory employer provision.

7. Broussard v. Heebe's Bakery, Inc., 1972, 263 La. 561, 268 So.2d 656, 658 and see Tate, J. concurring at 661.

This Court has commented on this problem before, e. g., Huson v. Otis Engineering Corp., 5 Cir., 1970, 430 F.2d 27, (see fn. 9) affirmed in part, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. See also, Nations v. Morris, 5 Cir., 1973, 483 F.2d 577.

8. Certainly nothing in 40 U.S.C.A. § 290 imposes such an obligation :

*State workmen's compensation laws; extension to buildings and works of United States*

Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation

successfully urged below, to afford it the benefits with none of the burdens. Stated another way, their contention is that the § 6 immunity extends only to principals who are legally required to pay compensation. If that legal obligation is missing, so is § 6 immunity.

The District Court agreed with this thesis. But as the claimants could not ever recover if this holding was reversed even if they jumped the § 6 "usual trade business or occupation" hurdle,[9] the District Court certified this appeal, 28 U.S. C.A. § 1252 which we allowed.

In the resolution of the basic § 6 problem, the facts can be quickly capsulated. These are eleven FTCA suits by contractor-employees for injuries [10] sustained from the operation of the Louisiana Army Ammunition plant near Minden, Louisiana. The plant is a government-owned facility privately operated

laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be.

For the purposes set out in this section, the United States of America vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen's compensation laws are affected, the right, power, and authority aforesaid: *Provided, however,* That by the passage of this section the United States of America in nowise relinquishes its jurisdiction for any purpose over the property named, with the exception of extending to the several States within whose exterior boundaries such place may be only the powers above enumerated relating to the enforcement of their State workmen's compensation laws as herein designated: *Provided further,* That nothing in this section shall be construed to modify or amend the United States Employees' Compensation Act, as amended.

June 25, 1936, c. 822, §§ 1, 2, 49 Stat. 1938, 1939.

For its genesis and development see: Murray v. Joe Gerrick & Company, 1934, 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821, 92 A.L.R. 1259, 1263; James Stewart & Company v. Sadrakula, 1939, 309 U.S. 94, 60 S. Ct. 431, 84 L.Ed. 596, 601; Travelers Insurance Co. v. Cardillo, 1944, 78 U.S.App.D.C. 392, 141 F.2d 362; Capetola v. Barclay White Company, 3 Cir., 1943, 139 F.2d 556, 153 A.L.R. 1046, cert. den. 321 U.S. 799, 64 S.Ct. 939, 88 L.Ed. 1087:

"It is, of course, patent from a reading of the Act of 1936 that Congress did not thereby adopt State Compensation Acts as federal law applicable to federal territories within the exterior boundaries of the States. But it is our opinion that the purpose and effect of the congressional Act was to free State workmen's compensation laws from the restraint upon their enforcement theretofore existing by reason of the exclusive federal jurisdiction of lands within the States and that, forthwith upon the federal enactment, Pennsylvania's Workmen's Compensation Act became operable as to injuries received by employees of private employers on federal property within the State's exterior boundaries. The situation created by the Act of 1936 was no different, so far as the operation of Pennsylvania's compensation law is concerned, than it would have been had Pennsylvania never ceded jurisdiction of the Navy Yard site to the federal government."

9. The plaintiffs have been very careful to reserve the question of whether the activity that Sperry Rand performs for the Government meets the criteria of "trade, business, or occupation" necessary to qualify the Government as a principal under § 6. Therefore, we assume for the purpose of this appeal that the manufacture of munitions is a traditional government function.

Without intimating pre-judgment, the assumption is probably a safe one since nations make wars and wars mean munitions the supply of which has from year to year and war to war come from Government-operated and cost-plus contractors of Government-owned facilities. See, Powell v. United States Cartridge Co., 1949, 339 U.S. 497 at 499, 70 S.Ct. 755, at 757, 94 L.Ed. 1017 (See especially fn. 2 at 1028).

10. Ten grew out of two separate violent explosions on loading lines, the eleventh from a fall from a railroad car.

by Sperry Rand Corporation pursuant to a contract with the Ammunition Procurement And Supply Agency of the United States Army (No. DA–11–173–AMC–80). Under the contract Sperry Rand hires the employees, prepares and loads the products for shipping, and generally does all jobs necessary to operate the plant. The cost-plus-fixed-fee contract obligates Sperry Rand to maintain workmen's compensation for the plant employees and the premiums for that insurance are reimbursed by the government as a regular contract expense.[11] Such coverage was obtained and in effect at the time of the accident that resulted in these suits.

■■ If we approach this with literalism the Government cannot prevail. This is so because Louisiana cannot impose on it a legal obligation either to procure compensation insurance or to pay compensation benefits. (See note 8 *supra*). But this is not the history of FTCA or its generous development by the Supreme Court. That Act is given a broad interpretation to effectuate the legislative aim of putting citizen and national sovereign in tort claims suits on a footing of equality as between private parties within that state.[12] Nice pieces of casuistry and hypersensitive legalisms are avoided.

Thus, in *Indian Towing* [13] the Court considered the Government argument that "the language of § 2674 (and the implications of § 2680) imposing liability 'in the same manner and to the same extent as a private individual under like circumstances . . .' must be read as excluding liability in the performance of activities which private persons do not perform. Thus, there would be no liability for negligent performance of uniquely government functions." Declaring that "we would be attributing bizarre motives to Congress were we to hold that it was predicating liability on such a completely fortuitous circumstance—the presence of identical private activity . . . [and there] is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so fine-spun and capricious as to be almost incapable of being held in the mind for adequate formulation." The Court held that the "language of the statute does not support the Government's argument." The Court rejected literalism and read the private person liability of § 1346 (see note 2 *supra*) as being "designed to . . . compensate the victims of negligence in the conduct of governmental activities in circumstances *like unto* those in which a private person would be liable . . . ." [14]

11. The United States was not, however, included as a named or omnibus insured on the Louisiana workmen's compensation policy.

12. For some of the express Congressional limitations in the FTCA, see Richards v. United States, 1961, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492.

The Act permits claimants to sue only in the federal courts, and not in the state courts which are available in actions against a private individual, § 1346(b); the Act prescribes its own period of limitations which may be shorter or longer than that of the State, § 2401(b); the claimant cannot obtain a trial by jury under the Act, although he could against a private individual, § 2402; the claimant cannot obtain interest prior to judgment in suits under the Act regardless of the state rule governing private individuals, § 2674; the claimant cannot obtain punitive damages under the Act, even though state law may provide for it as against a private defendant, § 2674; the claimant cannot recover any damages against the United States on any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, whereas he could recover such damages against a private individual, § 2680(h); the claimant cannot obtain any recovery against the United States on a claim arising in a foreign country, although he could against a private individual, § 2680(k); and the Act exempts the Government from liability for claims based on various types of activities, although a private individual would be liable in the same circumstances, § 2680.

13. Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48.

14. From 350 U.S. 61, 68–70, 76 S.Ct. 122, 100 L.Ed. 48.

Next, the Court in *Rayonier*,[15] limiting sharply some of its pronouncements in the Texas City Disaster Case,[16] held that the Government would be liable under vicarious Washington laws for fire fighting derelictions even though there was not like private activity and all usual activity—that of municipalities—would be subject to no liability.

We have done similarly in *Gavagan* [17] where, against a similar Governmental assertion that there was no like private activity, we held the Government accountable under FTCA for a land-air-sea rescue search.

Of course, we are not dealing here with interpretations on *coverage* of FTCA. Rather, it is on defenses. But we see no reason why in this liability by local standards criteria a like and sensible approach is not given to local defenses.

■ This takes us to the Louisiana aim of § 6 to assure compensation benefits to employees of contractors doing work for others. At bottom, claimants argue that the essence of the statute was to insure the employee "two debtors not one." But one thing that is not intended is double payment of compensation, once by the "actual" employer and once by the "statutory" employer. Indeed, while pursuit can in the Louisiana codal language be *in solido*, which is to say against (i) actual employer, (ii) statutory employer or (iii) both, only a single recovery is permitted.[18]

■ Of course this objective is accomplished through the unquestioned requirement that Sperry Rand, the contractor, maintain at the Government's expense workmen's compensation. Not only was it done in fact, but presumably it was done in accordance with established policies [19] which have the effect of not only relinquishing any claim to Federal territorial sovereignty over lands of the Federal enclave, but carrying out the substantive policies of § 290 (see note 8 *supra*) to assure privately-employed workers on Federal projects equal treatment with other industrial laborers in the state. Thus the goals of Louisiana and the United States are mutually met. The workers have the protection in fact,[20] that they would have if, in addition to Sperry Rand's insurer, they would have the direct obligation of the Government. On the other hand, with this assured in fact,[20] the Government, having seen to it that compensation by the contractor is afforded at the Government's expense, is, as would be a private Louisiana statutory employer, entitled to the § 6 immunity.

The key finally is the existence of adequate insurance required and paid for by the Government. Whether the result

---

15. Rayonier, Inc. v. United States, 1957, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354.

16. Dalehite v. United States, 1952, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; *see also*, Smith v. United States, 5 Cir., 1967, 375 F.2d 243, cert. den., 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106.

17. United States v. Gavagan, 5 Cir., 1960, 280 F.2d 319.

18. Jones v. Southern Tupelo Lumber Company, 257 La. 869, 244 So.2d 815 (1971):
"The courts below correctly cast all of the defendants solidarily, for when an employee is entitled to compensation and under R.S. 23:1061 or R.S. 23:1063 has sued the principal or the principal contractor together with the contractor or subcontractor, the liability of such defendants is solidary. * * * Under these statutes the claimant is entitled to proceed against the principal (or principal contractor) or the contractor (or subcontractor) or both as he chooses. The indemnification clauses, however, have the effect of finally imposing the loss of the principal or principal contractor upon the claimant's immediate employer." *Id.* 244 So.2d 815. *See also* Seabury v. Arkansas Nat. Gas Corp., 14 La.App. 153, 127 So. 25 [1930]; Calcote v. Century Indem. Co., 93 So.2d 271 [La.App., 3rd Cir., 1957]; Meche v. Farmers Drier & Storage, 193 So.2d 807 [La. App., 3rd Cir., 1967].

19. *See*, 41 C.F.R. 1–10. 502–1, which prescribes that compliance with applicable workmen's compensation and occupational disease statutes will be required.

20. Louisiana compensation benefits have been paid or are payable to each of the eleven claimants (or their successors).

would be the same if the Government contract did not require maintenance of compensation insurance is a matter for another day.

Reversed.