**Delmar Eugene WATKINS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 77–2237.**

United States District Court, D. South Carolina, Charleston Division.

Nov. 7, 1979.

---

A. Hoyt Rowell, III, Charleston, S.C., for plaintiff.

Thomas E. Lydon, Jr., U. S. Atty., Columbia, S.C., for defendant.

## ORDER

BLATT, District Judge.

This action was brought against the United States of America under the Federal Tort Claims Act, 28 U.S.C. Sections 1346, 2671, et seq.

Defendant has moved the court to dismiss plaintiff's complaint or, in the alternative, for summary judgment. Resolution of the motion will be aided by a preliminary statement of the facts in the case, to which the parties are in substantial agreement.

On or about September 3, 1975, the plaintiff, Delmar Eugene Watkins, was engaged in the course and scope of his employment as an employee of the Brown Construction Company, an independent contractor—(hereinafter referred to as "the Company"). The Company was installing pipe along the causeway leading from the mainland into the Marine Crops Recruit Depot, at Parris Island, South Carolina, during the summer and fall of 1975. The work was being done by the Company pursuant to the contract no. N62467–75–C–4309 (hereafter "Contract") between the Company and the Department of the Navy (Naval Facilities Engineering Command or NAVFAC). The NAVFAC Command Management Plan—(FY1976)—dated June, 1975—(defendant's Exhibit A–1)—sets out at pp. A–11 through

A–13, the general duties and responsibilities of that Command to the Navy and Marine Corps. This plan includes construction of public works, public works maintenance, military installation planning, civil engineering duties, management of minor construction and major repair projects, and operation and maintenance of utilities. One of the basic missions of the Naval Facilities Engineering Command, defendant's representative in the contract with Brown Construction Company, is the construction and maintenance of facilities at Naval and Marine Crops bases. In this case, the contract called for the construction of a 16″ water main. The new water main was necessary to supplement an existing water main to supply water to the entire Marine Corps Recruit Depot. Details of the work and control of its employees were the duty and responsibility of the Company. Defendant reserved the right of inspection and the right to stop work if circumstances warranted it.

The Company was utilizing a John Deere front-end loader with back-hoe attachment —(hereinafter referred to as "the back-hoe")—to dig the trench necessary for laying the pipe, in furtherance of the work required under the Contract. During the afternoon of September 3, 1975, plaintiff was standing in the trench, performing work for the Company, when the back-hoe, which was owned, operated, and controlled by the Company, for some unexplained reason, began moving toward him. William Dilsaver, a government inspector, was standing nearby. He yelled a warning to the plaintiff—(who was faced away from the machine)—and plaintiff attempted to scramble out of the trench; however, plaintiff was unable to move away and the head teeth of the bucket of the back-hoe caught the plaintiff's leg against the bell of the pipe, resulting in the loss of plaintiff's foot and a part of his leg.

The back-hoe was not equipped with a reverse signal alarm on September 3, 1975, or, if it was so equipped, the alarm was not operative. Plaintiff argues that such an alarm was required to be placed on the machine by virtue of the contract between the Company and defendant. [The defendant does not concede that the lack of a reverse signal was a proximate cause of the accident, but this dispute is not material at this time].

As expressed in 40 U.S.C. § 290, it is the settled policy of the defendant to require workmen's compensation insurance for contractors' employees performing work similar to that being done in this case. The contract herein provided, in its general provisions, as follows:

68. REQUIRED INSURANCE (1968 APR)

(a) The contractor shall procure and maintain during the entire period of this performance under this contract the following minimum insurance.

COVERAGE

| Type of Insurance | Per Person | Per Accident | Property |
|---|---|---|---|
| * | * | * | |
| 3. Workmen's | As required | | |

(b) Prior to commencement of work hereunder, the contractor shall furnish to the contracting officer a certificate or written statement of the above required insurance. The policies evidencing required insurance shall contain an endorsement to the effect that cancellation or any material change in the policies adversely affecting the interests of the Government in such insurance shall not be effective until 30 days after written notice thereof to the contracting officer.

This insurance coverage, under the South Carolina Workmen's Compensation Law— (42–1–10, et seq., S.C.Code of Laws (1976)) —was in force at the time of plaintiff's injury; plaintiff has, and continues to, receive benefits thereunder.

Defendant has urged several grounds for dismissal and/or for summary judgment, with arguments in support of its motion; however, the court is persuaded that the facts in this case clearly give rise to the well recognized "statutory employer" defense under South Carolina Workmen's Compensation Act, and consideration of defendant's other grounds and arguments is unnecessary.

The "statutory employer" defense is based upon § 42–1–400 of the South Carolina Code (1976), which provides:

> When any person, in this section and §§ 42–1–420 and 42–1–430 referred to as "owner", undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

South Carolina completely recodified its statutes in 1976, but this provision is identical to § 72–111 of the 1962 Code, and earlier statutes.

■ In 1939, the South Carolina Supreme Court held, since the "owner" referred to in a predecessor statute to § 42–1–400 was responsible for securing workmen's compensation benefits for employees of an independent contractor, the "owner", or "statutory employer", should also have the benefit of immunity from tort liability provided by the workmen's compensation law. [*Marchbanks v. Duke Power Company*, 190 S.C. 336, 2 S.E.2d 825 (1939)]. This holding was re-examined and reaffirmed by the South Carolina Supreme Court in *Adams v. Davison-Paxon Co.*, 230 S.C. 532, 96 S.E.2d 566 (1957), and this principle has been uniformly followed in South Carolina courts and in federal courts applying South Carolina law in diversity cases. *See, e. g., Corollo v. S. S. Kresge Co.*, 456 F.2d 306 (4th Cir.); *cert. denied*, 407 U.S. 911, 92 S.Ct. 2440, 32 L.Ed.2d 686 (1972).

■ The work in which plaintiff Watkins was involved at the time of the accident was admittedly[1] a part of the "trade, business, or occupation" of the defendant; a careful reading of the cases following *Marchbanks v. Duke Power Company, supra*, indicates that the concept of "trade, business, or occupation" is interpreted broadly. (*MacMullen v. South Carolina Electric and Gas Company*, 312 F.2d 662, 665–668 (4th Cir.); *cert. denied*, 373 U.S. 912, 83 S.Ct. 1302, 10 L.Ed.2d 413 (1963).

■ While it is true that the United States, because of sovereign immunity, cannot be forced to comply with the workmen's compensation laws of South Carolina, it is equally as correct, in this court's opinion, by insisting that the Brown Construction Company provide workmen's compensation insurance for its employees, including Watkins, that the United States has complied with every duty that would be required of a private person in an analogous situation. A private person who had done for his employees what the United States has required here would enjoy statutory employer immunity; therefore, it is appropriate that the United States should also enjoy that immunity.

No reported case has been cited by the parties, nor has the court's research revealed a case, in which South Carolina's "statutory employer" exemption has been applied in the context of a Federal Tort Claims Act suit. It is, therefore, appropriate to look to the law of other jurisdictions to determine that issue. *Woods v. Smith*, 296 F.Supp. 1128 (D.C.Fla.1969). Few

---

1. Admitted by plaintiff in response No. 22 to defendant's first set of interrogatories.

courts have addressed the precise point in issue here, i. e., does the United States as a defendant, under the circumstances of this case, and the law of the situs state, qualify as a "statutory employer"—(or the analogous terms "owner" or "principal")? However, two cases arising in the federal courts of Louisiana are directly on point, and are persuasive in their logic and reasoning in resolving this question.

*Stacey v. United States*, 270 F.Supp. 71 (E.D.La.1967), was an action pursuant to the Federal Tort Claims Act. Plaintiff sought recovery for personal injuries on the theory that the United States was the owner of the premises of the Michoud Facility in New Orleans. Specifically, plaintiff contended the United States had a duty to supervise the safety program and that it knew, or should have known, that there was smoke, fumes, as well as inadequate lighting, in his work area, and that these factors were the proximate cause of his accident. Plaintiff had fallen about 40 feet while working as a member of a "raising gang", reinforcing the roof trusses of the Michoud Plant. At the time, in the scope of his employment, plaintiff was employed by "W & M", an independent contractor performing truss modifications for NASA at the Michoud Plant. The contract for this work required "W & M" to procure and maintain compensation insurance for its employees.

The district court, entering judgment for the United States and dismissing the complaint, held that the work being performed by "W & M" was a part of the trade, business, or occupation of the United States acting through NASA, and that the United States was a statutory employer of plaintiff, under the Louisiana Workmen's Compensation Act, and, like a private person under similar circumstances, the United States being a principal under the Louisiana Workmen's Compensation Act was entitled to the statutory employer protection.

The other Louisiana decision heretofore mentioned in which the same theory was again applied in a Federal Tort Claims Act is the recent case of *Roelofs v. United States*, 501 F.2d 87 (5th Cir. 1974), *reh.*

denied, 511 F.2d 1402, *cert. denied*, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975). The Louisiana "statutory employer" doctrine is essentially identical to that followed in South Carolina, and the facts in *Roelofs* are similar in all relevant respects to the facts of the instant case.

*Roelofs v. United States, supra*, was before the court on a motion filed by plaintiffs to strike the government's affirmative defense under the Federal Tort Claims Act. The question there—(although stated somewhat differently)—was the same as in the instant case, namely, did the Louisiana Workmen's Compensation provide the exclusive remedy for plaintiffs?

The facts in *Roelofs* reveal that Sperry Rand Corporation, pursuant to a contract with the United States Army, operated an ammunition plant near Shreveport, Louisiana. This contract authorized Sperry Rand to hire employees, obtain supplies, and undertake all other things required to operate the plant. The United States paid Sperry Rand's allowable costs, plus a fixed fee. Sperry Rand was obligated under the contract to obtain workmen's compensation insurance in accordance with Louisiana's statutory requirements, and the premium therefor was eventually paid by the United States.

Each of the plaintiffs was an employee of Sperry Rand and was injured while allegedly in the course of his employment with that company. The United States contended it was a statutory employer—(or "principal")—within the meaning of the Louisiana Act, that this Act afforded plaintiffs their exclusive remedy, and that the United States was exempt from liability under the Federal Tort Claims Act. Plaintiffs contended that the Louisiana Act was inapplicable and that there was an available remedy against the United States under the Federal Tort Claims Act.

In *Roelofs*, the plaintiffs' argument that Louisiana's "statutory employer" defense was not available to the United States was considered persuasive by the district court, but unpersuasive by the Fifth Circuit Court of Appeals. Under the terms of the Feder-

al Tort Claims Act, the United States is liable for the negligent or wrongful act of any employee of the United States " . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The Court of Appeals agreed with the district court that the Louisiana Workmen's Compensation law did not bind the United States to any duties under that law, but that court noted that the United States, as a matter of its own policy and regulations, did require the contractor to provide workmen's compensation insurance for its employees. The Court of Appeals reasoned, since the United States had, in fact, complied with the duty imposed upon a statutory employer by Louisiana's Workmen's Compensation Law—(insisting that the contractor provide workmen's compensation insurance and reimbursing it for the premiums)—that the United States should enjoy the benefit of any immunities provided to statutory employers under Louisiana law.

The court is cognizant that the contract in *Roelofs* provided for certain allowable costs, plus a fixed-fee, while the contract in the instant case provides for an amount certain, or a fixed-fee; however, this is, in this court's opinion, a distinction without a difference. The contract here was let after competitive bidding, and the bidders were aware that workmen's compensation coverage was required. Certainly, this court must notice that good business practice and financial solvency dictate that all known costs and expenses, including insurance premiums, are submitted by a contractor in its bid.

Several cases should be noted which at first blush may appear contrary to the position adopted in *Roelofs*, and by the court in the instant matter; however, this court feels that these cases are distinguishable as hereinafter explained.

In *Kirk v. United States*, 232 F.2d 763 (9th Cir. 1956), the United States, acting through the Department of the Army, Corps of Engineers, was engaged in the construction of a dam on the Boise River in Idaho. Kirk, the plaintiff's intestate, was an employee of two general contractors, and he was fatally injured when a scaffold broke, causing him to fall into the river. Alleging that the land where the dam was being constructed was in the possession of the defendant, the United States, and that Kirk's fall and resultant death was caused by the negligence of the defendant's employees, the plaintiffs, who were the family of the deceased, brought suit under the Federal Tort Claims Act. The plaintiffs admitted that they had received a substantial sum under the Idaho Workmen's Compensation Act as a result of the death of their intestate. The United States moved for summary judgment, relying on the fact that it had waived immunity to suit under the Federal Tort Claims Act only in the same manner and to the same extent as a private individual under like circumstances, but it insisted that it did not waive any available defenses to which an individual would have been entitled under the same circumstances. The district court for the Southern District of Idaho had determined that the payment of compensation benefits was the exclusive remedy for the plaintiffs and granted summary judgment to the defendant. (*Kirk v. United States*, 124 F.Supp. 233 (D.Idaho 1954)). In reversing the district court, the Court of Appeals for the Ninth Circuit determined that the United States under the circumstances there involved, and, specifically, under the terms of the Idaho Workmen's Compensation Act, was not an employer or "owner" entitled to protection under that Act, as under the Idaho Act, in contrast to the South Carolina Act, only direct and actual employers were exempt from suit. Thus, the appellate court in *Kirk* concluded that, even if the United States were a private person, it would not be the type of "employer" for whom the Idaho Act provided protection.

In addition to the above determination, the Court of Appeals in *Kirk* noted that it could not conceive that a "private person" would be constructing a dam for a flood control project as was the United States in this instance, so as to bring the United

States within the "private person" liability provision of the Federal Tort Claims Act; however, the Court of Appeals held that even if such an unlikely conclusion could be reached, it would be axiomatic that this project would certainly be undertaken for the good of the public generally and not for profit; that under the terms of the Idaho Act, an employer conducting a business not for the sake of pecuniary gain was not covered by that Act; and, thus, such employer, like the United States in *Kirk*, could claim no statutory employer protection under the Idaho Act.

These two reasons advanced by the Court of Appeals for reversing *Kirk* under these special sections of the Idaho Act, and for allowing the plaintiffs to proceed under the Federal Tort Claims Act, certainly serve as no authority to allow suit under the South Carolina Workmen's Compensation Act in view of the holding of *Marchbanks v. Duke Power Co., supra*, and the multitude of federal and state cases following that theory.

Another case in which an employee of a contractor was allowed to bring suit against the United States under the Federal Tort Claims Act for an on-the-job injury was *Richardson v. United States*, 577 F.2d 133 (10th Cir. 1978), a case filed in Oklahoma, but decided under the terms of the Florida Workmen's Compensation Act. The United States had contracted with a painting contractor to repaint certain water tanks owned by the United States on a military reservation in Florida. Richardson was an employee of a subcontractor, who was to perform necessary sandblasting for the painting contractor, and he was injured in the course and scope of his employment, receiving Workmen's Compensation benefits under the Florida Act. The plaintiff's employer had been required under government regulations to carry Workmen's Compensation insurance. The court in *Richardson* held that, under the Florida law, the defendant could not claim a statutory employer defense because such defense was available only to one who had a *duty* to provide compensation coverage, and that an employer similarly situated to the United States had no such duty under the Florida law, for it would be neither an "employer" nor a "contractor" within the meaning of the Florida Workmen's Compensation Act. The United States admittedly was not plaintiff's direct employer but it argued that it was a "contractor" within the meaning of the statute and had a duty to provide Workmen's Compensation benefits. However, the court in *Richardson* determined that the United States was not a "contractor" within the meaning of the Florida Act, as it had no contractual relationship with plaintiff's employer, who was a subcontractor, and not the painting contractor with whom the United States did have a contract. Further, the *Richardson* court held that since the United States maintained no control over the manner in which the work was to be done, it was an "owner", and the Florida law, unlike South Carolina, allows a suit against an "owner" by an injured workman if the "owner" is a third party tort-feasor. The court in *Richardson* distinguished *Roelofs, supra*, by stating that the Louisiana law involved in *Roelofs* provided much broader coverage than the Florida law, and the *Richardson* court indicated that had the Florida law been as liberal as the Louisiana law, the statutory exemption claimed by the United States would probably have been applicable; however, since the court in *Richardson* concluded, under the Florida law, *unlike* the South Carolina and Louisiana law, that the United States was an "owner" subject to suit by an employee of a subcontractor, it necessarily concluded that the United States was not entitled to the defense it claimed, and plaintiff was allowed to proceed under the Federal Tort Claims Act.

A second case decided under the Florida Workmen's Compensation Act, *Whitney v. United States*, 451 F.Supp. 669 (N.D.Fla. 1978), recognized the distinction between the Louisiana and Florida law in holding that the statutory employer exemption was not available for the defendant. The court in the *Whitney* case succinctly explained the difference in the two compensation Acts by stating:

"There is no liability on the part of an owner, or principal, to secure compensation under the Florida Statutes." 451 F.Supp. at 670.

One further case merits mention on the issue here involved. *Barker v. Luna*, 439 F.Supp. 810 (D.Nev.1977) involved the question of whether a subcontractor's injured employee under the terms of the Nevada Workmen's Compensation Act would be a statutory employee of the United States. In *Barker*, the Small Business Administration, acting for the United States, had entered into a subcontract for certain painting work on a Veterans' Hospital, and the subcontractor had failed to secure the required workmen's compensation coverage for his employees. The Nevada Act provided, in such circumstances, that an injured employee could bring an action at law against his employer for damages. While holding that the injured employee was not the type of "employee" covered by the United States Employee's Compensation Act, so as to make the terms of that Act applicable, the court in *Barker* held that the injured employee, under the terms of the Nevada Act, was an employee of the principal contractor—(SBA/U.S.)—and that he was not barred from instituting suit against the United States under the Federal Tort Claims Act since "[i]f the United States (represented by the SBA) were a private individual it would be liable to plaintiff under the laws of the State of Nevada." (439 F.Supp. at 814). The court in *Barker* approved the holding in *Roelofs, supra*, and further indicated that had there been compensation coverage for the injured employee, he would have been limited to such compensation benefits, and suit against the United States, acting through the Small Business Administration, would not have been permitted.

The defendant in the instant case, in this court's opinion, if a private individual would be entitled to the statutory employer protection provided by the Workmen's Compensation law of South Carolina. This court feels that the fact that the United States could have, under the doctrine of sovereign immunity, escaped workmen's compensation liability completely is of no consequence, since the United States, as owner, required the insurance to be carried by the general contractor, who admittedly was performing work which was a part of the trade, business, and occupation of the United States. Based on the forgoing, it is

ORDERED, that the motion of the defendant for summary judgment be, and the same hereby is, granted.

AND IT IS SO ORDERED.