Michael **OLVEDA**

v.

**UNITED STATES of America.**

**Civ. A. No. M–78–10–CA.**

United States District Court,
E. D. Texas,
Marshall Division.

Feb. 17, 1981.

---

> At 969.

Scott Baldwin, Jones, Jones & Baldwin, Inc., Marshall, Tex., for plaintiff.

William J. Cornelius, Jr., Asst. U. S. Atty., Tyler, Tex.; for defendant.

## OPINION

STEGER, District Judge.

This is a Federal Tort Claim Action filed against the United States because of radiation exposure to the Plaintiff, Mr. Olveda, while he was employed at the Rocky Flats Plant near Boulder, Colorado. The U.S. Atomic Energy Commission owned and Dow Chemical Company, an independent contractor with the United States, managed and operated the Rocky Flats Plant during that time. Mr. Olveda was an employee of the Dow Chemical Company.

In connection with his employment Mr. Olveda was involved in an accident during which he was substantially contaminated with plutonium. The Complaint alleges that this radiation exposure caused Plaintiff to sustain "severe and permanent injuries to his entire body and nervous system." [1]

The accidental exposure occurred on August 22, 1971 and an administrative claim was filed on October 20, 1977. [2] On January 11, 1978 the Department of Energy denied the administrative claim. Twenty-one days later this lawsuit was filed. In the Complaint Plaintiff alleges that the Government was negligent and careless "in failing to furnish proper inspection, failing to furnish proper safety equipment and failing to furnish safe working conditions." [3] The United States filed an Answer and later filed a Motion for Summary Judgment which raised among other things the "statutory employer" defense.

That legal defense, a legislatively created immunity, has its roots in workmen's compensation theory. It recognized that a worker is better served by reasonable assurance of benefits through legislation for work-connected injuries without regard to fault rather than by preservation of his common law tort remedies with the associated burden of proving fault and the risk of encountering a judgment-proof defendant. [4]

By 1949 all states had enacted Workmen's Compensation Acts. [5] These acts typically require the employer to purchase workmen's compensation insurance for his employees and establish tort law immunity for the employer who so complies. [6] Employees lose the right to sue the employer in tort but gain reasonably assured benefits for

1. Complaint, Paragraph II at p. 1.

2. This Court notes that the United States did raise the two year statute of limitations argument of 28 U.S.C. § 2401(a). Since this case is clearly dismissable on the "statutory employer" defense, the accrual issue need not be and is not reached.

3. Complaint, Paragraph II at p. 1. This Court notes that the United States argued in its Motion for Summary Judgment that the United States is not liable for negligent acts or omissions of independent contractors. Of course, that proposition is entirely correct. *U. S. v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. U. S.*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). It appears to this Court that the allegations of governmental negligence in conducting a safety program are really duties the contractor (Dow) owed to its employees rather than duties the United States owed to the employees of the independent contractor. Article XVIII of Contract 1106 (the USA–Dow contract) requires Dow to "take all reasonable precautions in the performance of the work under this contract to protect the health and safety of employees...." *See Alexander v. U. S.*, 605 F.2d 828 (5th Cir. 1979); *Gibson v. U. S.*, 567 F.2d 1237 (3d Cir. 1977); *Bramer v. U. S.*, 412 F.Supp. 569 (C.D.Cal.1976); *Market Insurance Company v. U. S.*, 415 F.2d 459 (5th Cir. 1969); *Gowdy v. U. S.*, 412 F.2d 525 (6th Cir. 1969); *U. S. v. Page*, 350 F.2d 28 (10th Cir. 1965), cert. denied 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966). However, this Court does not need to decide whether or not Plaintiff has stated any allegations of governmental negligence as distinct from independent contractor's negligence since this Court holds *infra* that the United States is immune from this suit under the "statutory employer" doctrine.

4. *Larson's Law of Workmen's Compensation.*

5. *Larson's Law of Workmen's Compensation*, Vol. 1, § 5.30.

6. *Larson's Law of Workmen's Compensation*, Vol. 1, § 1.10.

work-connected injuries even if the employee negligently caused his own injury.

However, some employers were able to perform work without purchasing the required workmen's compensation insurance by hiring small uninsured independent contractors to do the actual work. Thus, the cost of production was decreased, but many injured workmen were not able to receive their legislatively mandated benefits because they worked for a subcontractor who had too few employees to be covered under state law or who deliberately refused to purchase insurance. Often common law didn't help because the employee could not meet the necessary burden of proof to prevail against the employer under the standard concepts of tort law. Even if the employee did win a tort suit the employer was often judgment-proof. Consequently, the public policy of assured compensation for work-related injuries was effectively foiled by an inability to bring the large general contractors into the workmen's compensation system. Forty-three states[7] have remedied this situation through legislation which has closed this loophole by requiring the general contractor to insure that workmen's compensation insurance has been purchased by his independent contractors. Under such state statutes the general contractor is considered the "statutory employer" of the employees of the independent contractor.[8] Since the general contractor is responsible for this insurance as if he were the actual employer, most states also give that general contractor the same immunity from common law tort suits enjoyed by the actual employer.[9] "The general contractor, like the immediate employer, is subjected to nonfault liability for compensation, whether he is called a statutory employer, or insurer, or anything else, and he ought in return to get immunity from damage suits."[10]

The work-connected injury which forms the basis of this lawsuit is alleged to be "severe and permanent injuries to [the Plaintiff's] entire body and nervous system."[11] These injuries were allegedly caused when "Plaintiff was exposed to Plutonium 239 . . . while an employee for Dow Chemical Company . . . working at the Rocky Flats Division of their plant at Boulder, Colorado."[12] In other words, Mr. Olveda was an employee of Dow Chemical Company which was an independent contractor of the United States.[13] This radiation exposure occurred at the Rocky Flats Plant located in Colorado. Mr. Olveda is barred from filing a tort suit against Dow Chemical Company because Colorado State law[14] grants Dow an immunity from such suits since Dow had purchased workmen's compensation insurance.[15] The premium for this workmen's compensation insurance was paid by the United States as an allowable cost under the contract with Dow.[16] Indeed, Mr. Olveda himself recognizes this statutory immunity and has not filed a lawsuit against his employer, Dow Chemical Corporation. Instead, he filed a claim for

---

7. The remaining seven states are California, Delaware, Iowa, Maine, New Hampshire, Rhode Island, and West Virginia.

8. *Larson's Law of Workmen's Compensation*, Vol. 1C, § 49.11 at p. 9–5.

9. *Larson's Law of Workmen's Compensation*, Vol. 2A, § 72.31 at p. 14–47.

10. *Larson's Law of Workmen's Compensation*, Vol. 2A, § 72.31 at p. 14–57.

11. Complaint, Paragraph II at p. 1.

12. Id.

13. The Complaint alleges radiation exposure from 1963 to 1972. During that time Dow Chemical Company contracted with the Atomic Energy Commission (AEC). The AEC became the Energy Research and Development Administration (ERDA) in 1975 and then became the Department of Energy (DOE) in 1977. AEC, ERDA, and DOE are all agencies of the United States. Consequently Dow was contracting with the United States.

14. Colorado Workmen's Compensation Law is found at C.R.S. § 8–40–101 to § 8–54–127. The complying employer's immunity is found at C.R.S. § 8–42–102.

15. Affidavit of James H. Hanes at p. 3.

16. Affidavit of James H. Hanes at p. 3. Affidavit of Herman Roser at pp. 4–5.

workmen's compensation.[17] Now he seeks to recover from the United States for the same injuries that were the basis of his workmen's compensation claim.

Under the Federal Tort Claims Act the liability of the United States is determined "in accordance with the law of the place where the act or omission occurred" and "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §§ 1346(b) and 2674. Since Mr. Olveda's radiation exposure occurred in Colorado this Court must examine the law of Colorado to determine if the United States qualifies as a "statutory employer" and gains the resultant immunity.

Indeed, the United States has moved for summary judgment arguing that under Colorado law it is immune from this lawsuit because it is a "statutory employer." Colorado Revised Statute § 8–48–101 states:

(1) Any person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof . . . shall be construed to be an employer as defined in articles 40 to 54 of this title and shall be liable as provided in said articles. . . . The employer, before commencing said work shall insure and keep insured his liability as provided in said articles, and such lessee, sublessee, contractor or subcontractor, as well as any employee thereof, shall be deemed employees as defined in said articles. . . . (2) If said . . . contractor, or subcontractor . . . before commencing such work insures and keeps insured his liability . . . neither said . . . contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind . . . against the person, company or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof, or against its employees, servants or agents.[18]

Under this statute the United States paid for workmen's compensation insurance as an allowable cost under the contract with Dow and thus becomes a "person, company or corporation" [C.R.S. § 8–48–101(2)] which cannot be sued by the employee of a subcontractor (Mr. Olveda) because the United States is statutorily "construed to be an employer" [C.R.S. § 8–48–101(1)]. Under Colorado Workmen's Compensation law, Mr. Olveda (an employee) has no right of action against an employer who purchases the required workmen's compensation insurance. C.R.S. §§ 8–42–102 and 8–43–104.

The purpose of Colorado's "statutory employer" law was explained by the Supreme Court of Colorado in *O'Quinn v. Walt Disney Productions, Inc.*, 177 Colo. 190, 493 P.2d 344, 346 (1972):

[T]he instant legislation confers an immunity on a general contractor or a real property owner in exchange for a duty which inheres to the benefit of a workman. Thus, while on the one hand a workman will be required to forego a negligence action against a general contractor or real property owner, he will on the other hand be assured that regardless of fault, the more solvent general contractor or real property owner stands behind and secures the Workmen's Compensation liability of the workman's immediate employer.

A further comment was made in the case of *Edwards v. Price*, 191 Colo. 46, 550 P.2d 856, 860 (1976):

The public policy upon which the Workmen's Compensation Act is founded derives from the need to provide monetary relief for workmen injured in the course of their employment, regardless of the negligence of the employer or the lack of negligence on the part of the employee. . . . The underlying concept is one of "no fault." It is further the policy of Colorado and the great majority of states to make the more financially solvent general contractor ultimately responsible for

---

17. Affidavit of James H. Hanes at p. 3.

18. The same "statutory employer" concept is applied to a landowner who hires a contractor

or subcontractor to repair his real property. See C.R.S. § 8–48–102.

workmen's compensation benefits arising out of injuries to employees of all subcontractors.... The policy interests are embodied in section 8–48–101, C.R.S. 1973 and are a legitimate state objective.

In return for this ultimate statutory liability, the general contractor is relieved of any liability for "contribution or action of any kind, including actions under section 8–52–108" Section 8–48–101(2), C.R.S. 1973....

It is the general contractor to whom the employees of all subcontractors may look for workmen's compensation if their immediate employer is uninsured or financially irresponsible.

Recently, the Colorado Supreme Court concisely stated a purpose of Colorado's "statutory employer" law in a case where it was not applied:

> The purpose of the contracting out provision is to prevent employers from avoiding financial responsibility by contracting out their regular work to uninsured independent contractors. *Hefley v. Morales*, 595 P.2d 233, 235 (Colo.1979).

Clearly, the policy and impact of the Colorado "statutory employer" law is consistent with the general policy of such laws as enunciated in *Larson's Workmen's Compensation Law*.

An accident at the Rocky Flats Plant has already been the subject of litigation in Colorado. In that case, like the present case, the Plaintiff was the employee of an independent contractor of the United States. In that case, like the present case, the United States had purchased workmen's compensation insurance through the Plaintiff's direct employer as an allowable and required expense pursuant to the terms of the contract between the United States and the independent contractor. In that case the United States District Court for the District of Colorado dismissed the lawsuit since the United States as the Plaintiff's "statutory employer" was immune from a tort suit filed by the Plaintiff. *Scanlon v. U. S.*, Civil No. 78–F–509, U.S.D.C. for the D. of Colorado, June 21, 1979.

Although the *Scanlon* case involved a non-radiation injury, there is nothing in the language or logic of workmen's compensation law generally and Colorado law specifically to distinguish between radiation and non-radiation cases. Consequently, the *Scanlon* case is dispositive.

The United States Court of Appeals for the Fifth Circuit has also held that when state law recognized the "statutory employer" principle the United States should be entitled to this immunity if it meets the requirements of state law. *Roelofs v. United States*, 501 F.2d 87 (5th Cir. 1974) *cert. denied* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975). Indeed, virtually all federal courts which have considered the issue have come to the same conclusion after examining the applicable state law. *Bergeron v. U. S.*, 495 F.Supp. 222 (W.D.La.1980); *Snow v. U. S.*, 479 F.Supp. 936 (D.Nev.1979) *appeal pending*, No. 80–5091 (9th Cir.); *Barker v. Luna*, 439 F.Supp. 810 (D.Nev.1977); *Stacey v. U. S.*, 270 F.Supp. 71 (E.D.La. 1967); *John E. Lewis v. U. S.*, 501 F.Supp. 39, U.S.D.C. D.Nev., 1980; *Delmar E. Watkins v. U. S.*, 479 F.Supp. 785, U.S.D.C. D.S.C., 1979; *Robert E. Cutting v. U. S.*, Civil No. C–76–299SC, U.S.D.C. N.D.Cal., August 16, 1977.

The legal theories of "nonliability for the torts of employees of independent contractors" and "statutory employer" do not conflict. The "nonliability for the torts of independent contractors" legal theory is based upon the legal doctrine of *respondeat superior* and is required by the Congressional decision of a limited waiver of sovereign immunity as expressed in 28 U.S.C. §§ 1346(b), and 2671 whereas the concept of "statutory employer" simply enunciates a state legislative judgment that the United States as well as other general contractors should be required to purchase workmen's compensation insurance to insure that employees of independent contractors receive such protection. Once the United States complies with that state law, the United States is entitled to statutory immunity just like the independent contractor. In fact, the "statutory employer" defense is designed to operate precisely when there is

an independent contractor relationship. Rather than allowing an employee to be at the mercy of the independent contractor's purchase of workmen's compensation insurance or financial solvency, state legislatures have linked the general contractor with the employee of the independent contractor through the statutory duty to purchase workmen's compensation insurance which covers the employees of independent contractors. In return for imposing this extra burden upon the general contractor the same common law tort immunity given to independent contractors in return for their purchase of workmen's compensation insurance is given to general contractors.

In its waiver of sovereign immunity Congress specifically mandated that the United States "shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. If Mr. Olveda was attempting to sue a general contractor which had purchased workmen's compensation insurance sufficient to fulfill its statutory duty under Colorado law, there is no question but that Mr. Olveda could not sue such a general contractor because it would be his "statutory employer" under Colorado law. C.R.S. §§ 8–48–101 and 8–48–102. There is no reason in law or logic to treat the United States any differently and the Colorado courts have so held.

Under the preceding analysis it is clear, and this Court so holds, that Mr. Olveda is limited to seeking a recovery through a workmen's compensation claim. He cannot sue the United States, his "statutory employer," under Colorado law. Consequently, this Court grants summary judgment to the United States.